[L. A. No. 29557. In Bank. June 26, 1968.]

WILLIAM BERRY, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD, FLORENCE FURNITURE COMPANY, INC. et al., Respondents.

Rose, Klein, & Marias and Howard N. Lehman for Petitioner.

Everett A. Corten, Edward A. Sarkisian, Sheldon M. Ziff, Zonni, Ginocchio & Taylor and Marco J. Zonni for Respondents.

MOSK, J.—We are called upon to decide whether there is substantial evidence in the record to support a finding of the Workmen's Compensation Appeals Board (hereinafter board) that half of petitioner William Berry's disability is due to a preexisting physical impairment and half to an industrial injury. The evidence compels our conclusion that his entire disability is the result of an industrial injury.

In May 1964, Berry hit his left knee on a dresser while moving it up a flight of stairs in the course of his employment. The knee became swollen, painful and filled with fluid. A number of doctors who examined him made various diagnoses of his condition, including rheumatoid arthritis and osteomyelitis. It was not until April 1965 that his illness was diagnosed as disseminated coccidioidomycosis, a fungus disease endemic to the San Joaquin Valley. It is contracted by the inhalation of tiny spores; these infected Berry's lungs and spread through his bloodstream to various portions of his anatomy. In its disseminated form the disease is deemed to be very serious.

The undisputed evidence established that Berry had contracted coccidioidomycosis prior to his knee injury and its dissemination was not caused by the injury. However, two experts, including one who specialized in the study of this uncommon ailment, testified that the trauma to Berry's knee caused the infection to lodge there. That is, prior to the injury the disease had disseminated through Berry's body but it had been dormant; the injury precipitated the localization of the fungus, resulting in "advancement" of the disease. Berry had never injured either leg prior to May 1964 and had not received medical treatment for any injury to his legs. The underlying fungus disease was entirely asymptomatic, and he was unaware of its existence.

The referee found, after a series of hearings in 1965, that

Berry had sustained an industrial injury. This finding was affirmed by the board. Subsequently, additional proceedings were held to determine the issue of apportionment. The referee found that the injury caused permanent disability of 71 percent, and that no apportionment was appropriate because "the undisputed evidence vitiates any indication of a preexisting disability, and the oral testimony by defendant's treating physician refutes the inference that the disease process would have progressed to disability without the industrial trauma to the left knee."

On reconsideration, the board reversed the referee's decision and found that one-half of Berry's disability was attributable to the underlying disease, relying upon two reports of Dr. Randall H. Parker, who had treated Berry, and a report of Dr. Francis M. McKeever, who had examined him. These reports will be discussed below.

Section 4663 of the Labor Code provides, "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury." The proper application of this statute and a companion statute, section 4750,[1] has been made abundantly clear in recent decisions of this court, and there is no disagreement between the parties as to the rules appropriate to the determination of the issue here. ■ In *Reynolds Electrical & Engineering Co.* v. *Workmen's Comp. Appeals Board* (1966) 65 Cal.2d 438, 442-443 [55 Cal.Rptr. 254, 421 P.2d 102], we said: "It is well settled that the acceleration, aggravation, or 'lighting up' of a preexisting nondisabling condition is an injury in the employment causing it [citation] and 'If the resultant disability is entirely due to the industrial injury lighting up the previous dormant condition, then the employer is liable for that disability and there can be no apportionment.' ■ Whether a disability results in whole or in part from the normal progress of a preexisting disease or represents a fully compensable lighting up or aggravation of a preexisting condition is a factual question for the commission to determine, and its award will not be annulled if there is any substantial evidence to support it." (See also, *Fred Gledhill Chevrolet* v. *Industrial Acc. Com.* (1964) 62 Cal.2d 59, 61 [41

---

[1]Section 4750 relates to the compensation payable to an employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter.

Cal.Rptr. 170, 396 P.2d 586] ; *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1962) 57 Cal.2d 589, 593 [21 Cal.Rptr. 545, 371 P.2d 281].)

 It is undisputed that Berry's disability is due to the condition of his knee and that prior to the injury he had no overt symptoms referable to his underlying disease. The matter to be decided, then, is whether his entire disability is due to the fact that the injury "lighted up" or aggravated the previously dormant fungus disease, in which case the board incorrectly apportioned half that disability to the disease, or whether the normal progression of the disease would have resulted in Berry's disability regardless of the injury. We conclude that the medical reports relied upon by the board could not justify its determination that 50 percent of Berry's disability was due to his prior disease.

The first of the medical reports cited by the board in support of its determination was rendered by Dr. Parker and dated February 17, 1967. It states in part, "I have received your letter . . . relative to the possible apportionment of this patient's case between a pre-existing medical condition and the injury which he suffered on May 11, 1964. . . . Mr. Berry's injury . . . did not cause the dissemination of this fungus from his lungs into his blood stream. However, it is most certainly my opinion that the injury which he suffered on May 11, 1964, caused the localization of this dissemination into his knee. However, what is a fact is that the patient's present disability and most serious disease locus is referable to the left knee. That is to say, the thing that is preventing him from going back to work is not coccidioidomycosis of the lung or any other site, but rather coccidioidomycosis of the left knee. Therefore, it would be my opinion that if any intelligent estimate of apportionment could be made by anyone, an apportionment of fifty-fifty would be proper. That is to say, it would seem fair to me that fifty percent of this patient's disability is due to the fact that he had pre-existing coccidioidomycosis, and that fifty percent of his disability would be due to the fact that he had an injury to his left knee which caused localization of the coccidioidomycosis in this joint. In my opinion, it is very difficult to make such an apportionment, and it would seem to me extremely difficult to make an apportionment of a 60-40 or 80-20, or any other similar apportionment. It would seem to me that both the previously existing coccidioidomycosis and the injury are equally responsible for the patient's present condition. I hope that my opinion will

be of some value to you and to Mr. Berry, but most certainly it is not based on any scientific tenet, but rather an offhand feeling that both the pre-existing condition and the injury are responsible for the patient's present condition, and probably equally responsible.''

The second report, also from Dr. Parker and dated March 13, 1967, relates that ''both the underlying disease from which [Berry] suffered at the time of his injury and the injury which he suffered to his left knee were equally responsible for his present general condition.'' However, the report also ascribes all his disability to the fact that the disease localized in the area of the left knee, and states that ''the localization of the disease to the area of the left knee is directly the result of the injury which he suffered,'' and that ''were it not for this one area . . . he could return to some form of work.''

It is evident from the foregoing excerpts that Dr. Parker suggested it ''would seem fair'' to apportion one-half of Berry's disability to the prior disease because the doctor was under the misapprehension that if an employee has a preexisting disease and thereafter suffers an industrial injury, the resulting disability should be apportioned between the two, even though the industrial injury caused the previously dormant disease to ''light up.'' As discussed in *Reynolds Electrical, supra,* the law is to the contrary. Viewed in the light of prevailing rules, the Parker reports cannot reasonably justify apportionment. Indeed, they compel the conclusion that Berry's entire disability resulted from the condition of his knee, that the disease, which was asymptomatic before the injury, was ''lighted up'' by the trauma, and that therefore no apportionment was proper. Under these circumstances, the fact that the doctor stated it was his ''offhand feeling'' that it would be ''fair'' to apportion 50 percent of the disability to the prior disease is irrelevant to the board's determination. ■ Opinions based upon assumptions in conflict with the established rules for apportionment cannot be utilized to uphold the board's findings.

■ Moreover, when Dr. Parker was examined at the hearing in the light of the proper criteria for apportionment, he clearly stated that he could not say with reasonable medical probability that the disease would ever have resulted in disability absent the injury and that if it were not for the injury Berry would not have had a disability referable to his left knee. The witness explained that the apportionment recommended in his report of February 17, 1967, was based

upon the effect of the disease upon Berry's general health, and that the views he had expressed, as stated in the first sentence of the report, related to an apportionment of Berry's "pre-existing medical condition" rather than his disability.

The third medical report upon which the board based its determination was given by Dr. Francis M. McKeever. He stated that "the contusion of the knee . . . probably only called his attention to an inflammatory process which was already active." This report was issued on June 3, 1965, prior to the time it was determined that Berry's disability was caused by an injury of industrial origin. The sentence immediately preceding the foregoing quotation stated, "Since an etiological diagnosis of the cause of the inflammation of Mr. Berry's knee has been established, it is my opinion that his condition of his knee and the disability resulting from it is not the result of the injury sustained in May of 1964." While this evidence might have supported a conclusion that none of Berry's disability could be attributed to his employment, the issue of industrial causation was not before the board since this matter had been determined favorably to Berry in the 1965 proceedings and was res judicata. If a disability is established to be the result of an industrial injury, a finding of apportionment between industrial and nonindustrial causes cannot be supported by prior medical testimony that the employee's disability was entirely unconnected with his employment. The board may rest a decision only on medical reports that are germane. (*Jones* v. *Workmen's Comp. App. Bd.* (1968) *ante,* pp. 476, 480 [67 Cal.Rptr. 544, 439 P.2d 648].)

The board noted in its opinion that Dr. Parker related it was possible Berry would become considerably worse and might eventually succumb to the disease. The opinion states that in view of this evidence it would be neither fair nor lawful to hold the employer responsible for the preexisting condition "or the natural progress thereof," and that the conclusion on the issue of apportionment might be different if Berry's disease could be cured so that he could be restored to the same condition he was in prior to his industrial injury or if his overall disability could be reduced by treatment.

While these qualifying observations indicate the board was reluctant to follow the referee's recommendation because of concern that failure to apportion would impose an onerous burden on the employer in view of the permanence and

seriousness of Berry's illness, they do not establish that apportionment is justified. In *Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.* (1946) 73 Cal.App.2d 555 [166 P.2d 908], it was said, ''It is now too well settled in this state to require extended citation of authority that the employee is entitled to compensation for disability proximately caused by industrial injury regardless of whether the employee's condition at the time of injury was average or subnormal. Thus, an aggravation of an existing infirmity where such aggravation is proximately caused by the employment is compensable, even though a normal man would not have been adversely affected. This rule applies even though it is shown that the employee would have ultimately died from such disease, if the evidence shows and the commission finds that the injury hastened or produced his death. (See many cases collected 1 Campbell, Workmen's Compensation, § 104, p. 80, particularly in fn. 115.) Industry takes the employee as it finds him. A person suffering from a preexisting disease who is disabled by an injury proximately arising out of the employment is entitled to compensation even though a normal man would not have been adversely affected by the event.'' (73 Cal.App.2d at pp. 558-559.)

The decision of the board is annulled and the cause is remanded to the board for further proceedings consistent with the views expressed herein.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.