[L.A. No. 29738. In Bank. Jan. 15, 1971]

LYN R. BALLARD, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
GRILEY SECURITY FREIGHT COMPANY et al., Respondents.

## COUNSEL

Brundage & Roseman and Steven Roseman for Petitioner.

Rupert A. Pedrin, Sheldon M. Ziff, Nathan Mudge, Gabriel Sipos and Donald J. Drost for Respondents.

## OPINION

**PETERS, J.**—While working as a secretary on July 22, 1966, petitioner sustained injuries to her back. She received temporary disability through February 12, 1967, and on April 22, 1968, she received an award of 12¼ percent permanent disability. Neither party sought reconsideration.

On July 1, 1968, she petitioned to reopen the matter on the grounds that her condition had worsened and that she was in need of further treatment. She claimed that medication she required to alleviate the continuing pain caused by her injury had resulted in her becoming addicted to such medication. She had been treated by a number of doctors for her back condition.

It was shown by pharmacy and doctors' records that during the period from September 6, 1966, to February 1, 1967, she was provided with 100 capsules of Parafon Forte, 50 Equagesie, 30 Fiorinal, 12-ounce Riopan, 80 Librium, 48 Tylenol, 36 Tylenol with codeine, 90 Darvon compound, 90 Darvo-Tran, 18 Seconal, 60 Zactirin, 30 Nembutal, an unknown quantity of Phenaphen with codeine, and an unknown quantity of Noludar.

Dr. Poindexter, an internist, reported in October 1967 that in addition to her back problem petitioner had a drug dependency which "is directly related to the original accident and can best be described as a complication of the industrially caused accident of July, 1966."

Dr. Strassman, a psychiatrist, examined petitioner, at her attorney's request, twice in late May of 1968 because of reports that she had been taking increasing dosages of pain medication, over and above that prescribed by the various physicians. She told him that she took pain pills throughout the day for the pain in her back, excessive sleeping pills at night, "bennies to even get going in the morning," and tranquilizers to relieve nervousness and tension. Included in the drugs she was then taking were Darvon, Seconal, Nembutal, Codeine, Miltown, Demeral, Percodan, and Benzedrine. She denied ever using marijuana, LSD, or heroin.

Dr. Strassman, stated in his report of June 17, 1968: "DIAGNOSIS: Drug habituation secondary to back injury, iatrogenically produced. DISCUSSION:

This patient has a low tolerance for pain of any kind. Following her injury she began to increase the intake of drugs in order to remove any vestiges of pain or discomfort. This necessitated ingesting large amounts of narcotics and sedatives. The secondary effects of these drugs interfered with her normal physiology and now it is necessary that she continue to ingest high quantities of drugs because of drug effects. She sees her irritability and problems as secondary to her back injury but it is my opinion that they are now caused by the interference of normal physiology through drug effect. She is now in a vicious cycle of needing to take more drug to create the drug effect and the original reason (her back injury) has now been lost. It is my opinion that the personality problem of this patient initially led to the increased ingestion of drug, but at this point the drugs themselves have created problems for the patient."

Petitioner testified at the hearing that she took medication prescribed by respondents' physicians to cure and relieve from the effects of her back injury and that because the dosages prescribed did not relieve her, she took the increased dosages and supplemented the prescriptions by obtaining medication elsewhere. She stated that although she had taken tranquilizers on occasion prior to her employment, she had not taken them for any substantial period immediately preceding her injury and had made no regular use of medication during the six months prior to working for respondent employer. Some of petitioner's testimony was vague and contradictory, and the referee commented that she was extremely nervous throughout the hearing and frequently on the verge of tears. On one or two occasions she broke down in tears, necessitating recesses.

Dr. Malitz, a psychiatrist, examined petitioner on four occasions in September and October of 1968 apparently at the request of the insurer. She told the doctor that she had been buying numerous medicines on the "black market," and displayed a number of the pills that she had been taking, including Librium, 10 mg., Darvon Compound, 65 mg., Nembutal or Seconal, Tuinal, grains 1½, Phenaphen, Benzedrine, a small white tablet resembling Phenobarbital, Percodan, and Tylenol with Codeine (#3). She also said that she sometimes took Miltown, Dexedrine, and Dexedrine Spansules, although she did not have any of those with her. She claimed to take varying and large amounts of the pills each day.

Dr. Malitz said the patient was vague, evasive, guarded, and negativistic and admits that she frequently tells lies. He concluded that Mrs. Ballard has "a lifelong personality disorder characterized by passive-aggressive and sociopathic behavior and unresolved oral needs. This has apparently resulted in excessive use and abuse of medicines, which we are able to document as far back as 1965 when she took more tranquilizer than had been

prescribed and was also taking her mother's tranquilizer. . . ." The doctor did not doubt that she was currently taking medicine improperly but stated that she was not taking as many drugs as she claimed.

The doctor also stated: "Even if we were to accept the patient's statements at face value, there would be nothing to indicate that the negligible psychic stress associated with her injury was a causative factor. The claimant's psychiatric consultant states, 'It is my opinion that the personality problem of this patient initially led to the increased ingestion of drug'; yet in his diagnosis he indicates that the problem was 'iatrogenically produced' (induced by physicians). I think it is highly inaccurate and unfair to blame the patient's doctors for a manifestation of her pre-existing personality disorder, especially when the records do not indicate that they prescribed most of the medications she claims to take. Mrs. Ballard is not psychotic, she is mentally competent, and she must accept full responsibility for any of her actions in illegally obtaining and using drugs."

In a supplemental report in May 1969, Dr. Malitz stated that as to several of the prescribed medications there was no evidence of dependence or habituation resulting from therapeutic dosages. Although he stated that two of the prescribed drugs may be habit forming and others may result in dependence or habituation after prolonged or excessive use, he found "no evidence that Mrs. Ballard was given by prescription the types and dosages and quantities of medicines that could conceivably, even in a person psychiatrically susceptible, result in a problem of drug dependence or drug habituation or drug addiction."

The referee's report on the petition for reconsideration, adopted by the appeals board in its order denying reconsideration, stated that in the "sense that she probably is habitually using drugs, she would be considered 'addicted,' and it is probable that she has now reached the point that she is in need of the treatment described by Dr. Strassman,"[1] although the referee said that she was not taking the full amount of drugs she claimed.

The referee reasoned: "Dr. Malitz cogently analyzes the habit-forming potential of all of the various medications prescribed by defendants' physicians. Taken in the quantities prescribed, he opines that she could not possibly become 'addicted.' Essentially the issue is whether applicant can capriciously consume the medication contrary to instructions and obtain an unknown quantity of unidentified drugs which probably have considerably greater addictive propensities than those legally provided, and then charge the defendants herein with liability for the drug problem which results from

---

[1]Dr. Strassman had recommended that petitioner be hospitalized and withdrawn from medications except for certain sedatives.

the cumulative intake of all the medications. Defendants' legal responsibility should be restricted to the effects of the drugs furnished by their treating physicians, taken substantially as prescribed, and it is extremely unlikely that this quantity would or did result in 'addiction.' . . . The most likely cause of her addiction is the obvious life-long neurotic personality problems and the injury simply serves to provide a rationalization for her recourse to drugs. In essence, the referee concludes that her problems would have culminated in her present addiction state even in the absence of this trauma and the treatment rendered thereafter."[2]

 Section 4663 of the Labor Code provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

It is settled that the section must be read in the light of the rule that an employer takes the employee as he finds him at the time of the employment. Accordingly, when a subsequent injury lights up or aggravates a previously existing condition resulting in disability, liability for the full disability without proration is imposed upon the employer, and the appeals board may apportion the disability under the section "only in those cases in which part of the disability would have resulted, in the absence of the industrial injury, from the 'normal progress' " of the preexisting disease. (E.g., *Smith* v. *Workmen's Comp. App. Bd.,* 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822]; *Granado* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 399, 401 [71 Cal.Rptr. 678, 445 P.2d 294]; *Zemke* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 794, 796 [69 Cal.Rptr. 88, 441 P.2d 928]; *Berry* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 786, 789 et seq. [69 Cal.Rptr. 68, 441 P.2d 908]; *Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd.,* 65 Cal.2d 438, 442-443 [55 Cal.Rptr. 254, 421 P.2d 102]; *Colonial Ins. Co.* v. *Industrial Acc. Com.,* 29 Cal.2d 79, 83-86 [172 P.2d 884]; *Tanenbaum* v. *Industrial Acc. Com.,* 4 Cal.2d 615, 617-618 [52 P.2d 215].)

Similar rules have been applied in cases where, after an industrial injury, the workman commits suicide, and it is shown that the injury and the resulting disability were causally related to the suicide. Recovery is proper if it is shown that without the injury there would have been no suicide. (*Beau-*

---

[2]The original opinion of the referee questioned whether there was a disability and, if so, whether it would be compensable in view of petitioner's statements regarding treatment. In addition, he raised the ground that the employer would not be responsible for any disability. His finding was in general terms that petitioner had no new or further disability or need for medical treatment as a result of the industrial injury. On reconsideration, however, it is clear that the basis of the denial of any benefits is, as shown by the quotations above, asserted lack of responsibility of the employer for any disability.

*champ* v. *Workmen's Comp. App. Bd.,* 259 Cal.App.2d 147, 152 et seq. [66 Cal.Rptr. 352]; *Burnight* v. *Industrial Acc. Com.,* 181 Cal.App.2d 816, 822 et seq. [5 Cal.Rptr. 786].)

There is no evidence that petitioner was addicted to drugs prior to her injury or prior to the prescription of drugs to relieve from its effects, and the record in the light of the finding of the referee adopted by the board, does not warrant a denial of benefits. He did not find that she was not now addicted but found that she "would be considered 'addicted' " in the sense that she was an habitual user. He said she was in need of treatment, although he questioned the extent of addiction.

Although the referee was correct in limiting the employer's liability to the effects of the drugs furnished by prescription, such liability extends not only to situations where those drugs by themselves would cause addiction but also to situations where the prescribed drugs light up or aggravate a preexisting condition resulting in disability. In short, the fact that "the most likely cause" of the addiction is the preexisting "obvious life-long neurotic personality problems" does not serve to warrant denial of recovery if the addiction resulted in part from the prescribed drugs. The employer takes the employee as he finds him at the time of employment. Similarly, the finding that her problems would have culminated in addiction "even in the absence of this trauma and the treatment rendered thereafter" do not furnish a basis for denial for all recovery because even in cases where disability would follow from the normal progress of the preexisting disease apportionment is proper where the industrial injury has contributed to the disability. There is no finding that the prescribed drugs did not, along with the personality problems and the illegally obtained drugs, contribute to any part of the disability, and the findings do not support the denial of recovery.

Moreover, the referee's finding that the addiction would have occurred even in the absence of the injury and the prescribed medication is not sustained by the evidence. Dr. Malitz refers to her disability as a "manifestation of her pre-existing personality disorder," but does not state whether the industrial injury and its treatment may have also been a causative factor. It is apparent that his opinion is based upon the incorrect legal theory that petitioner cannot recover if her preexisting personality problem was a contributing cause. He states that petitioner "must accept full responsibility for any of her actions in illegally obtaining and using drugs." The decisive question is not whether her actions in illegally obtaining drugs were a causative factor or contributed to her disability; the question is not whether it was appropriate for the doctors to prescribe drugs for her or whether they were to

"blame"; under the authorities discussed above, the question is whether the prescribed drugs were a causative factor in her present disability. Dr. Malitz nowhere states that her present condition was caused solely by her personality disorder and the unlawfully obtained drugs or that her present condition would have occurred absent the industrial injury and the prescribed drugs. His statement that "there would be nothing to indicate that the negligible psychic stress associated with her injury was a causative factor" is by its own terms limited only to the psychic stress.

Under the authorities discussed above, if the accident or treatment contributed to her addiction problem, petitioner is entitled to a partial recovery, and if the addiction would not have materialized but for the injury she is entitled to a full recovery notwithstanding the fact that her personality problems also were contributing factors. ■ Dr. Malitz does not deny either of the bases of liability, and a medical report based upon an incorrect legal theory and devoid of relevant factual basis does not constitute substantial evidence. (*Smith* v. *Workmen's Comp. App. Bd., supra,* 71 Cal.2d 588, 593; *Zemke* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 794, 798, 801.)

The order of the Workmen's Compensation Appeals Board is annulled, and the cause is remanded to that board for further proceedings consistent with the views expressed herein.

Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

**WRIGHT, C. J.**—I concur for the reason that there is *no* evidence that the prescribed medication was not a causative factor of petitioner's disability and for the further reason that the referee's finding that the disability would have resulted even in the absence of the industrial injury and the prescribed medication is not supported by substantial evidence. Dr. Malitz's reports upon which the referee based his decision conclude that the psychic stress associated with petitioner's injury was not a "causative factor" and that the prescribed medication was insufficient to cause drug habituation or addiction. In addition the reports state that petitioner's preexisting personality disorder "has apparently resulted in excessive use and abuse of medicines" and that it would be "inaccurate and unfair to blame [petitioner's] doctors for a manifestation of her pre-existing personality disorder." From this last statement it cannot be concluded that petitioner's disability is *only* a manifestation of her personality disorder and that the prescribed medication did not contribute to her addiction. Thus, there is no indication in Dr. Malitz's re-

ports that the disability would have occurred in the absence of the injury or the prescribed medication or that the prescribed medication did not contribute to the disability. As there is no evidence that the injury and treatment were not causative factors of petitioner's addiction, I concur in the remand to the Workmen's Compensation Appeals Board for further proceedings.

**McCOMB, J.**—I dissent. I would affirm the order of the Workmen's Compensation Appeals Board.