[Civ. No. 33690. First Dist., Div. Two. Dec. 27, 1973.]

BYRON R. REDMOND, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD and
CITY AND COUNTY OF SAN FRANCISCO, Respondents.

**COUNSEL**

Rosenthal & Leff and Irwin Leff for Petitioner.

Thomas M. O'Connor, City Attorney, and Raymond E. Agosti, Deputy City Attorney, for Respondents.

## OPINION

**ROUSE, J.**—Petitioner-applicant, by his guardian ad litem, seeks review and annulment of an opinion and decision after reconsideration issued by the board on July 19, 1973. The principal question is whether the board's decision after reconsideration, which reduced the referee's award of 100 percent permanent disability to 20 percent permanent disability, is supported by the evidence.

Applicant, a 63-year-old motor coach operator employed by the City and County of San Francisco since 1955, sustained injury to his face, neck, left hand and left leg on May 13, 1970, when a young female passenger attacked him with a knife and kicked him in a dispute over the issuance of a transfer ticket. The injury resulted in a brief period of temporary disability and did not appear to leave any permanent residuals. Applicant returned to work on July 3, 1970.

On April 7, 1971, applicant consulted a psychiatrist about an impotency problem for which he had been receiving testosterone. His psychiatrist reported that the problem was markedly aggravated by the assault and applicant's struggle with the young girl, and that applicant had developed a severe depression.

Applicant continued to work until some time in April 1971, when he sought medical attention because of a hip condition. On May 19, 1971, surgery (osteotomy) was performed upon applicant to correct a left hip pathology resulting from a nonindustrial motor vehicle accident in 1942. The surgery was considered successful. After convalescing, applicant returned to work on October 6, 1971. His psychiatrist, Dr. Cahan, reported that his return to work awakened memories of the attack upon him, and applicant was able to work only three days.[1] He consulted Dr. Cahan again on October 18, 1971, complaining of depression, and on October 27, 1971, he attempted suicide by shooting himself in the head, destroying most of the right frontal lobe of his brain.

On August 1, 1972, the referee found that the suicide attempt was a compensable consequence of the industrial injury and awarded petitioner temporary disability from October 9, 1971 (the date applicant stopped work) to and including October 27, 1971 (the date of the suicide attempt),

---

[1]Dr. Cahan reported that applicant experienced psychological difficulties with "people barging in on me, questions and answers from the passengers, I was so disturbed I couldn't sleep, all those people! So I didn't go back." Dr. Cahan testified that when applicant attempted to return to work in October 1971, he felt threatened in his conscious mind by the danger of being attacked again, and he felt threatened in the unconscious mind because his feelings about an attack threatened his sexuality.

permanent disability of 100 percent, further medical treatment, and reimbursement for self-procured medical treatment. The referee chose to rely upon the medical opinion of applicant's treating psychiatrist, Dr. Cahan, rather than respondent's expert, Dr. Roberts.

Respondent City and County of San Francisco's petition for reconsideration was granted on October 17, 1972. Noting a conflict in the medical opinions of psychiatrists Cahan and Roberts, the board directed that applicant be examined by an independent psychiatrist, a method recommended in *Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317-318 [90 Cal.Rptr. 355, 475 P.2d 451].

In its opinion and decision after reconsideration dated July 19, 1973, the board accepted the opinion of the independent medical examiner, Dr. Brodsky, rescinded the award of the referee, and reduced the award of permanent disability to 20 percent. We have concluded that the board's decision is not supported by substantial evidence in light of the entire record.

In *Garza* v. *Workmen's Comp. App. Bd., supra,* at page 317, the court stated: "[T]he board is empowered to resolve conflicts in the evidence [citations], to make its own credibility determinations [citations], and upon reconsideration to reject the findings of the referee and enter its own findings on the basis of its review of the record [citations] . . . ." ■ Our function on appellate review is to determine whether the decision of the board is supported by substantial evidence in light of the entire record. (*LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432]; *Garza* v. *Workmen's Comp. App. Bd., supra,* p. 317.)

The referee, in making the original award of 100 percent permanent disability, relied upon the opinion of Dr. Cahan, the applicant's treating psychiatrist: "Dr. Cahan's testimony was that the assault by the female passenger produced a state of mind which brought about a severe depression and led applicant to the attempt to take his own life. He testified categorically that in his opinion if the industrial injury had not occurred, the suicide attempt would not have occurred. In my opinion his testimony must be given full credence. As the treating psychiatrist, he is in a better position than was Dr. Roberts to express an opinion respecting applicant's state of mind and the motivation which led to the attempted suicide. Moreover, the evidence of record discloses that Dr. Cahan had knowledge of pertinent facts highly relevant to applicant's motivation which facts were not known to Dr. Roberts. I conclude therefor [*sic*] in reliance on Dr. Cahan's testimony that the requisite causal relationship is established."

In its opinion and decision after reconsideration, the board indicated its reliance upon Dr. Brodsky's opinion and included therein highlights of his testimony as summarized by the hearing referee: "He was hard put to connect all the incidents, but the attack in April or May 1970 apparently threw the applicant off his track. He concludes that the attack participated 15 to 20% in the ultimate suicide attempt, and that such apportionment is arbitrary. Many things happened in the applicant's life, but the attack did throw him off. However, one must look to a lifetime history of emotional disequilibrium, etc. . . . He assumed that the attack was approximately one-fifth of the contribution to the ultimate suicide attempt. It participated in the total picture."

Applicant contends that because it was Dr. Brodsky's opinion that the attack upon applicant was a *contributing* factor in the suicide attempt, no apportionment of permanent disability may be made, citing *State Comp. Ins. Fund* v. *Ind. Acc. Com.* (1959) 176 Cal.App.2d 10 [1 Cal.Rptr. 73] (opinion by Tobriner, J.). In that case a carpenter injured an eye in an industrial accident. Handicapped by double vision caused by the injury, he sawed off a finger. The employer claimed the loss of the finger was due to petitioner's negligence. The court interpreted proximate causation in compensation cases to mean that the first injury need only be a contributing factor to the second injury, and that the negligence concept could no more be imported here than for the initial injury. The court held that the commission must apply the proximate cause doctrine as to require "only contribution to, and not totality of, causation." (P. 20.)

Applicant further contends that there is no evidence of a "normal progression" of a "pre-existing condition" which caused the suicide attempt, and that there is no substantial evidence that applicant's "personality" and "tendency toward depression" (other causes named by Dr. Brodsky), but for the industrial accident here involved, would have resulted in a suicide attempt and total and permanent disability (citing *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1962) 57 Cal.2d 589 [21 Cal.Rptr. 545, 371 P.2d 281]; *Berry* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 786 [69 Cal. Rptr. 68, 441 P.2d 908]; *Zemke* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794 [69 Cal.Rptr. 88, 441 P.2d 928]).

A case decided after the cases cited by the applicant is *Ballard* v. *Workmen's Comp. App. Bd.* (1971) 3 Cal.3d 832 [92 Cal.Rptr. 1, 478 P.2d 937]. In *Ballard,* a secretary sustained industrial injury to her back and as a result of taking medication prescribed for relief of pain, she developed a drug dependency. She was denied disability benefits on the basis of a doctor's opinion that the most likely cause of her addiction was her obvious lifelong

neurotic personality problems. The Supreme Court, in annulling the order of the Workmen's Compensation Appeals Board, stated: "Section 4663 of the Labor Code provides: 'In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury.'

"It is settled that the section must be read in the light of the rule that an employer takes the employee as he finds him at the time of the employment. Accordingly, when a subsequent injury lights up or aggravates a previously existing condition resulting in disability, liability for the full disability without proration is imposed upon the employer, and the appeals board may apportion the disability under the section 'only in those cases in which part of the disability would have resulted, in the absence of the industrial injury, from the "normal progress" ' of the pre-existing disease. [Citations.]

"Similar rules have been applied in cases where, after an industrial injury, the workman commits suicide, and it is shown that the injury and the resulting disability were causally related to the suicide. Recovery is proper if it is shown that without the injury there would have been no suicide. [Citations.]" (Pp. 837-838.) The court then went on to set forth the rule governing the *Ballard* situation: "Under the authorities discussed above, if the accident or treatment contributed to her addiction problem, petitioner is entitled to a partial recovery, and if the addiction would not have materialized but for the injury she is entitled to a full recovery notwithstanding the fact that her personality problems also were contributing factors." (P. 839.)

The record shows that the applicant had been in the employ of respondent employer as a bus driver for 15 years prior to the time of the attack upon him with very little loss of time from work. Thus it seems clear that applicant's "personality" and his "tendency toward depression" were not labor disabling at the time of the industrial injury of May 13, 1970.

If applicant's injury of May 13, 1970, aggravated a previously *nondisabling condition,* he is entitled to recover for the entire resulting disability and there can be no apportionment. (*Place* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 372, 375, fn. 2 [90 Cal.Rptr. 424, 475 P.2d 656]; *Zemke* v. *Workmen's Comp. App. Bd., supra,* p. 796; *Fred Gledhill Chevrolet* v. *Ind. Acc. Com.* (1964) 62 Cal.2d 59, 61 [41 Cal.Rptr. 170, 396 P.2d 586]; see Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) § 14.23, p. 492.)

Under these circumstances, we believe the proper rule to be that

if the attempted suicide would not have materialized *but for the industrial injury* of May 13, 1970, applicant is entitled to a full recovery notwithstanding the fact that the depression that resulted from the industrial injury increased after the surgery for his orthopedic problem. (*Ballard* v. *Workmen's Comp. App. Bd., supra,* p. 839; see also *Beauchamp* v. *Workmen's Comp. App. Bd.* (1968) 259 Cal.App.2d 147, 152 [66 Cal.Rptr. 352], and *Burnight* v. *Industrial Acc. Com.* (1960) 181 Cal.App.2d 816 [5 Cal.Rptr. 786].)

Although Dr. Brodsky was of the opinion that applicant was a "good candidate" for suicide as a result of his "lifelong depressive personality and unrealistic thinking," that he "might well have committed suicide at any time when the stress became sufficiently great," and that the "stress of the operation was sufficiently great in itself to cause this man to become psychotically depressed and later suicidal," he nowhere indicates that the suicide attempt which resulted in applicant's disability would have occurred in the absence of the industrial injury.

On the contrary, it is clear from his report and testimony that he was of the opinion that the industrial injury sustained by the petitioner was a contributing factor toward his suicide attempt.

██ Although the relevant and considered opinion of one physician, though inconsistent with other medical opinions, may constitute substantial evidence in support of a finding of the board (*Smith* v. *Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822]), expert medical opinion does not always constitute substantial evidence on which the board may rest its decision. (*Place* v. *Workmen's Comp. App. Bd., supra,* p. 378.)

Dr. Brodsky's opinion, based upon assumptions in conflict with the established rules of apportionment, cannot be utilized to uphold the board's finding on apportionment. (*Berry* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 786, 791 [69 Cal.Rptr. 68, 441 P.2d 908].) ██ Applicant is entitled to a full recovery unless it can be demonstrated as a reasonable medical probability that the attempted suicide which resulted in applicant's total and permanent disability would have materialized *in the absence of the industrial injury* of May 13, 1970. (*Zemke* v. *Workmen's Comp. App. Bd., supra,* p. 799.) Therefore, Dr. Brodsky's opinion, which admits that the industrial injury was at least partially responsible for the suicide attempt, does not constitute substantial evidence to support a denial of full compensation for an industrially caused disability. (*Zemke* v. *Workmen's Comp. App. Bd., supra,* p. 801.)

The decision of July 19, 1973, is annulled, and the cause is remanded for further proceedings consistent with the views expressed herein.

Taylor, P. J., and Kane, J., concurred.