[Civ. No. 52314. Second Dist., Div. One. Oct. 31, 1978.]

MARKET BASKET, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
JUANITA ALLEN, Respondents.

## COUNSEL

Edward F. Hustedt and Michael Goldberg for Petitioner.

Sanders & Todd, Arthur R. Todd and Michael R. Wadsworth for Respondents.

## OPINION

**HANSON, J.**—Petitioner Market Basket contends that the appeals board erred in finding respondent Juanita Allen sustained psychiatric disability as the result of her admitted industrial injury while employed by Market Basket and that if substantial evidence does support such finding then the appeals board erred in not apportioning the psychiatric disability.

### I.

### FACTS

On March 21, 1975, Allen sustained an admitted injury arising out of and occurring in the course of her employment for Market Basket as a grocery checker. The injury occurred when a shopping cart struck her in the pelvis area.

Because of a dispute between Allen and Market Basket as to whether the injury continued to be a cause of disability, the workers' compensation judge referred Allen to William Navigato, M.D., as an independent medical examiner in orthopedic surgery. As stated in his report of November 24, 1975, Dr. Navigato found no objective basis for any disability. Dr. Navigato opined: "In my opinion, reviewing the past medical history, the medical records, and her mechanism of injury, it

would seem to me that the complaints she now voices are somewhat out [of] proportion to the mechanism of injury. Also, her subjective complaints are not substantiated by the objective findings. It would be my opinion that this lady did receive a contusion to the lower pelvic area, to the pubic bone area, perhaps a slight strain to the lumbar spine, all of which have resolved and she is left primarily with her subjective complaints. I really see no significant evidence of objective orthopedic disability and feel that she is at a permanent and stationary status. Any future limitations would be strictly on a subjective basis only. I don't feel that there is any need for any significant orthopedic treatment at this time, other than perhaps some symptomatic use of analgesics as may be needed."

A hearing was held on April 23, 1976, for the cross-examination of Dr. Navigato. Dr. Navigato testified that there was "very little in the way of any disability" and that he would classify Allen's subjective complaints as "minimal."

Apparently, in light of Dr. Navigato's report and the evaluations of other treating and/or examining physicians who suggested an emotional basis for Allen's excessive physical complaints, Allen obtained a psychiatric consultation from H. A. Levin, M.D. Dr. Levin, as stated in his report of February 5, 1976, while finding nothing to suggest "a malingering or exaggeration of the complaints relative to her injury," opined that Allen had "no significant psychopathology."

In July 1976 Allen was committed to the psychiatric unit of the Riverside County Hospital and put under a 72-hour hold. However, after an evaluation there, she was told that she could go home.[1] Apparently around this time, Allen was under the care of a "psychiatric social worker."[2]

Allen then sought a psychiatric opinion from Donald J. Feldman, M.D., who initially evaluated Allen on July 29, 1976, and referred her for psychological testing to William H. Soltz, Ph.D., a clinical psychologist.

In his report of August 20, 1976, Dr. Soltz gave the following evaluation of Allen in light of the psychological testing: "The results of

---

[1]The details of this "hospitalization" are unclear. Inexplicably, the pertinent records of Riverside County Hospital are not part of the record.

[2]The record identifies the "psychiatric social worker" as "Sally J. Hileman" at the "Mental Health Unit, Indio Health Center." These medical records also are not part of the present record.

the psychological tests indicate that this patient is not a malingerer and is a person who is highly likely to use certain conversion and hysterical type mechanisms to avoid dealing with painful aspects of reality. She is highly impulsive, overreactive, and highly emotional and probably is overreacting to her present physical maladies which is causing added subjective feelings of pain and distress. This is not an organic profile nor one that would be considered seriously emotionally disturbed. There are no signs of psychosis but there are some symptoms of hysterical characterological components."

In his report of September 15, 1976, Dr. Feldman's diagnosis to "consider" were "hysterical neurosis, conversion type" and "hysterical personality disorder." Dr. Feldman felt that Allen's disability was related to the injury of March 21, 1975, stating:

"It is interesting to note that evaluations for different incidents almost 8 years apart reveal a person who has subjective complaints without objective findings.

"No physician suggests that Mrs. Allen is malingering, and in fact, many have pointed out that she appears to be naive, but quite truthful.

"Psychometric evaluation which will be enclosed also reveals no evidence of malingering.

". . . . . . . . . . . . . . . . . .

"Psychiatrically, from a review of her medical records, the present clinical psychiatric evaluation, as well as the psychometric testing, her symptoms appear to be consistent in many ways with a hysterical neurosis, conversion type.

"I expect there is a strong premorbid history, possibly hysterical personality disorder, or at least a person who has for many years overreacted to physical injuries and possibly other aspects of her life. She does not feel that she needs psychiatric assistance. She has not worked since May 1975.

"At this time I suggest the probability of a hysterical neurosis, conversion type.

"There appears to be a significant premorbid psychiatric disposition despite no formal premorbid psychiatric contacts.

"......................

"It appears that her psychiatric symptoms—probably premorbid—were exacerbated and exaggerated by her injury on March 21, 1975, and the subsequent medical course."

In a supplemental report dated December 1, 1976, Dr. Feldman expressed the view that Allen's "medical records indicate a person who had a premorbid history of anxiety and tension, probably quite prone to hysterical conversion features."

Dr. Feldman's report of February 18, 1977, declares Allen permanent and stationary with a psychiatric disability of "slight, possibly even slightly moderate in intensity." Dr. Feldman also stated on the question of Allen's continued orthopedic complaints that "[t]here is a strong psychiatric overlay to her present orthopedic complaints, and this appears to be on the basis of a hysterical neurosis, conversion type."

Market Basket obtained a psychiatric evaluation from Carl E. Graner, M.D. In his report of January 13, 1977, Dr. Graner opined that while Allen did have psychiatric problems these were neither caused nor aggravated by the injury of March 21, 1975. Dr. Graner stating, in part: "This patient has had conversion symptoms involving almost every organ system. Most of her present complaints she has had long before the present time. The instant injury is described as having been trivial and virtually inconsequential. It seems to me that this injury was not a substantial injury, but became a convenient focus for an ongoing personality disorder. She is a rather isolated woman who is divorced. She does not date. Her children have left home and married and she had conflict with the older daughter, with whom she lived. In my view, she is suffering from an hysterical personality, which is by definition a life long condition. It did not start with the instant injury, and in my opinion, it was not aggravated by the injury. She can certainly use any psychiatric help she is willing to accept, though it is not likely to be helpful until her claim has been terminated. Termination of the claim will probably not make a substantial difference in the outcome, since she had the same kinds of problems long before the onset of the claim, but she is certainly not likely to improve while the claim is pending."

The workers' compensation judge found that the injury had resulted in both orthopedic and psychiatric permanent disability. The judge described the disability as consisting of "[m]inimal pain in the area of

groin and low back" and "[s]light psychiatric disability." These factors of disability resulted in a 20 standard rating which adjusted to 23 percent for age and occupation. (See Lab. Code, § 4660.) According to the permanent disability rating specialist this rating was based solely on the psychiatric disability as the "minimal" groin and low back pain was not ratable permanent disability. (See Cal. Admin. Code, tit. 8, ch. 4.5, subch. 1, § 9727.)

The judge held that there was no apportionment of the disability as part nonindustrial.

Market Basket then petitioned for reconsideration by the board. The majority of the three member panel of the board affirmed the trial judge's decision as to the industrial relationship of the psychiatric disability and on the question of apportionment. The dissenting member felt that "the record contains no evidence which supports [Allen's] claim for an industrially caused psychiatric disability" but that the "record as a whole supports a finding of pre-existing, disabling, psychiatric condition to which all of [Allen's] present disability should be attributed."

II.

DISCUSSION

A. *Industrial Psychiatric Injury*

■ " 'Industry take the employee as it finds him. A person suffering from a preexisting disease who is disabled by an injury proximately arising out of the employment is entitled to compensation even though a normal man would not have been adversely affected by the event.' (*Liberty Mut. Ins. Co.* v. *Ind. Acc. Com.* (1946) 73 Cal.App.2d 555, 599 [166 P.2d 908]; see also *Zemke* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794, 799-800 [69 Cal.Rptr. 88, 441 P.2d 928]; *Berry* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 786, 793 [69 Cal.Rptr. 68, 441 P.2d 908]; *Lumbermen's Mut. Cas. Co.* v. *Ind. Acc. Com.* (1946) 29 Cal.2d 492, 496 [175 P.2d 823]; *Tanenbaum* v. *Industrial Acc. Com.* (1935) 4 Cal.2d 615, 617-618 [52 P.2d 215]; *Spillane* v. *Workmen's Comp. App. Bd.* (1969) 269 Cal.App.2d 346, 349 [74 Cal.Rptr. 671]; *Peterson* v. *Workmen's Comp. App. Bd.* (1968) 266 Cal.App.2d 818, 820-821 [72 Cal.Rptr. 545]; see generally 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, *supra*, § 11.02[2], p. 11-13.)" (*Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 282 [113 Cal.Rptr. 162, 520 P.2d 978].)

■ On the issue of whether there is psychiatric disability on an industrial basis, the question for this court is merely whether substantial evidence in light of the entire record supports the decision of the board. (*LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].)

In this regard it is well established that the relevant and considered opinion of one physician, though inconsistent with other medical opinions, may constitute substantial evidence. (*Place* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 372, 378 [90 Cal.Rptr. 424, 475 P.2d 656]; *Smith* v. *Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 812].) Here, Dr. Feldman's opinion fully supports the finding that the industrial injury has resulted in psychiatric disability. Thus, as Dr. Feldman's opinion constitutes substantial evidence, we may not properly disturb the trial judge's finding on the question.

## B. · *Apportionment.*

■ Market Basket contends that if the appeals board properly held there was psychiatric disability on an industrial basis then the appeals board erred in not apportioning the psychiatric disability as part nonindustrial.

Apportionment is governed by Labor Code sections 4663 and 4750. These sections prohibit charging the employer with that portion of the permanent disability which is actually and solely attributable to the natural progression of a preexisting disease process or a preexisting disability. (*Franklin* v. *Workers' Comp. Appeals Bd.* (1978) 79 Cal.App.3d 224, 235-248 [145 Cal.Rptr. 22].)

Labor Code section 4663 provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

"It is settled that the section must be read in the light of the rule that an employer takes the employee as he finds him at the time of the employment. Accordingly, when a subsequent injury lights up or aggravates a previously existing condition resulting in *disability*, liability for the full disability without proration is imposed upon the employer, and the appeals board may apportion *the disability* under the section 'only in those cases in which part of *the disability* would have resulted, in

the absence of the industrial injury, from the "normal progress" ' of the preexisting disease. (E.g., *Smith* v. *Workmen's Comp. App. Bd.,* 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822]; *Granado* v. *Workmen's Comp. App. Bd.* 69 Cal.2d 399, 401 [71 Cal.Rptr. 678, 445 P.2d 294]; *Zemke* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 794, 796 [69 Cal.Rptr. 88, 441 P.2d 928]; *Berry* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 786, 789 et seq. [69 Cal.Rptr. 68, 441 P.2d 908]; *Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd.,* 65 Cal.2d 438, 442-443 [55 Cal.Rptr. 254, 421 P.2d 102]; *Colonial Ins. Co.* v. *Industrial Acc. Com.,* 29 Cal.2d 79, 83-86 [172 P.2d 884]; *Tanenbaum* v. *Industrial Acc. Com.,* 4 Cal.2d 615, 617-618 [52 P.2d 215].)" (Italics added.) (*Ballard* v. *Workmen's Comp. App. Bd.* (1971) 3 Cal.3d 832, 837 [92 Cal.Rptr. 1, 478 P.2d 937].)

Labor Code section 4750 provides: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

■ Section 4750 "has been interpreted to mean that, 'An employer [or his insurer] of a workman who has a permanent physical impairment and who thereafter sustains a compensable injury resulting in permanent disability, is not liable for compensation for the ensuing combined disabilities, but only for that portion of permanent disability which is caused by the last injury.' (*Smith* v. *Industrial Acc. Com.,* 44 Cal.2d 364, 365 [282 P.2d 64]. See also *Edson* v. *Industrial Acc. Com.,* 206 Cal. 134, 138-139 [273 P. 572].) The purpose of this statutory provision is to encourage the employment of physically disabled persons by assuring an employer that he will not be liable for the total combined disability present after an industrial injury but only for that portion which is attributable to the subsequent industrial injury. (See 2 Larson, Workmen's Compensation Law (1961) pp. 54-61; Comment (1956) 44 Cal.L. Rev. 548.)" (*State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson)* (1963) 59 Cal.2d 45, 48-49 [27 Cal.Rptr. 702, 377 P.2d 902].)

■ "[A]s with section 4663, under section 4750 the employer is liable to the extent the industrial injury accelerates, aggravates or 'lights up' the preexisting disability or impairment. (*Bstandig* v. *Workmen's Comp.*

*Appeals Bd.* (1977) 68 Cal.App.3d 988, 997 [137 Cal.Rptr. 713].) [¶] Thus, if absent the industrial 'aggravation' there would be no disability, there can be no apportionment." (*Dorman* v. *Workers' Comp. Appeals Bd.* (1978) 78 Cal.App.3d 1009, 1018 [144 Cal.Rptr. 573].)

■ ■   The record here indicates that prior to the industrial injury Allen had emotional problems. Even Dr. Feldman makes note that Allen "for many years overreacted to physical injuries."

In resolving the issue of apportionment, the board must rely upon expert medical opinion. (*Zemke* v. *Workers' Comp. App. Bd.* (1968) 68 Cal.2d 794, 798 [69 Cal.Rptr. 88, 441 P.2d 928]; *Franklin, supra,* 79 Cal.App.2d 224, 235.) Dr. Graner opined that Allen's psychiatric disability was entirely nonindustrial; accordingly, Dr. Graner had no need to further discuss the issue of apportionment. Dr. Feldman, on the other hand, while making note of the "preexisting personality disorder" does not discuss the issue of apportionment. It is clear that since Dr. Feldman failed to discuss apportionment, the appeals board declined to find apportionment; this fact reveals the crux of the problem of apportionment here.

Labor Code section 5703, subdivision (a) permits the appeals board to receive into evidence written medical reports of examining or attending physicians in lieu of oral medical testimony. The board has adopted section 10606 of the Workers' Compensation Appeals Board Rules of Practice and Procedure (Cal. Admin. Code, tit. 8, ch. 4.5, subch. 2, § 10606) to regulate the quality of written medical reports admitted under Labor Code section 5703, subdivision (a).

Section 10606 of the WCAB Rules provides: "Physicians' Reports as Evidence. The Appeals Board favors the production of medical evidence in the form of written reports. These reports should include: [¶] (a) The date of the examination; [¶] (b) The history of the injury; [¶] (c) The patient's complaints; [¶] (d) Source of all facts set forth in the history and complaints; [¶] (e) Findings on examination; [¶] (f) Opinion as to the extent of disability and work limitations, if any; [¶] (g) Cause of the disability; [¶] (h) Medical treatment indicated; [¶] (i) Opinion as to whether or not permanent disability has resulted from the injury and whether or not it is stationary. If stationary, a description of the disability with a complete evaluation; and [¶] (j) The reason for the opinions."

Section 10606 of the WCAB Rules "indicates that, in appropriate cases, physicians should not only express their opinions on apportionment but explain the bases for such opinions." (*Dorman, supra,* 78 Cal.App.3d 1009, 1018, fn. 4.) Omission by Dr. Feldman to discuss the issue of apportionment renders his report defective. (*Dorman, supra,* 78 Cal.App.3d at p. 1019.) Such being the case, we hold that there is a lack of substantial evidence supporting the finding in favor of Allen that there is no basis for apportionment where such finding is based upon Allen's reporting physician who failed to discuss the question.

Accordingly, the award and order denying reconsideration are annulled to the extent it finds no basis for apportionment and the matter is remanded to the board for such further proceedings as are consistent with this opinion. This is not to say we find the record necessarily supports apportionment. We only hold the board erred in denying apportionment based upon a defective medical report. On remand the board will undoubtedly find it necessary either to obtain Dr. Feldman's opinion on the issue or obtain the opinion of another physician.

Lillie, Acting P. J., and Thompson, J., concurred.