[L.A. No. 31146. Feb. 4, 1980.]

PULLMAN KELLOGG et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and
MARTIN G. NORMAND, Respondents.

**COUNSEL**

Rowen, Swanson & Rose and Joel D. Swanson for Petitioners.

Richard W. Younkin, William B. Donohoe, Dexter W. Young, Steven Roseman and John Sherman for Respondents.

Yale I. Jones as Amicus Curiae on behalf of Respondents.

**OPINION**

**MOSK, J.**—Martin G. Normand suffered an injury to his lungs partially as the result of repeated exposure to harmful substances in his employment over a period of years. The Workers' Compensation Appeals Board (board) awarded him benefits, and refused to apportion any part of his disability to nonindustrial causes, i.e., the circumstance that Normand had smoked a package of cigarettes a day for many years before he became disabled. Normand's employer, Pullman Kellogg, and its insurance carrier, Eldorado Insurance Company (hereinafter referred to collectively as Pullman Kellogg) seek review of the board's decision, asserting primarily that the medical evidence before the board compelled the conclusion that part of the disability was due to Normand's smoking habit, and therefore apportionment was required.

Normand began work as a plumber and pipefitter in 1936. For the next 40 years, he was exposed in the course of his work to such substances as dust from welding and soldering, and to fumes from steel, plastic, and asbestos. In 1970, he noticed that he tired easily, and by 1972 he had difficulty in breathing. He sought medical treatment, and

his condition was diagnosed as chronic obstructive pulmonary disease with chronic bronchitis and emphysema. He has been unable to work since 1976. From 1934 until 1972, Normand smoked a package of cigarettes a day.

Under section 5500.5 of the Labor Code,[1] as it read at the time involved here, an employee was entitled to seek compensation benefits for cumulative injuries only against his employers in the five years immediately preceding the last date upon which he was exposed to the hazards of the employment. Subdivision (c) of the section allows an employee the right to proceed against one of those employers; the employer selected must pay the entire award, but under subdivision (e) it may seek contribution from others joined as defendants in the proceeding. In December 1976, Normand filed an application for workers' compensation benefits against Pullman Kellogg and a number of other employers, alleging that he had suffered injury to his "[i]nternal system, chest, [and] lungs" due to "[c]ontinuous exposure to particles in [the] air" between 1971 and 1976. Normand elected to proceed against Pullman Kellogg.

In support of his application, Normand submitted the report of a Dr. Sills, who declared: "It is my opinion that there was sufficient exposure over a period of years to aggravate the patient's chronic bronchitis. His chronic bronchitis and obstructive pulmonary disease is due to two factors. One—his own air pollution by smoking thirty pack years and the other by the numerous fumes and dusts and welding fumes, etc. that he was exposed to over a period of years. . . . [¶] The principal finding [is] that of obstructive lung disease with trapping of air. I, therefore, would have to note that the probable cause for this patient's pulmonary pathology is due 50% to his smoking history and 50% to the various fumes over a forty year period." A Dr. Bierer, whose report was submitted by Pullman Kellogg, opined that 10 percent of Normand's disability was due to cumulative industrial exposures to soldering fumes and 90 percent to a "long smoking history."

The workers' compensation judge found that Normand was limited to sedentary work resulting in permanent disability of 40 percent. Relying upon the report of Dr. Sills, he apportioned 50 percent of the disability to nonindustrial causes. ■ On reconsideration, the board annulled the finding of apportionment on the ground that no medical evidence was produced to establish that Normand would have been disabled ab-

[1]All references in this opinion are to the Labor Code.

sent his exposure to harmful substances in his employment or that he was disabled prior to such exposure. In reaching its conclusion, the board relied on *Berry* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 786 [69 Cal.Rptr. 68, 441 P.2d 908] and *Zemke* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794 [69 Cal.Rptr. 88, 441 P.2d 928]. In our view, the board's determination was correct.

The principles applicable to apportionment of disability to nonindustrial causes where an employee suffers from a prior nondisabling disease not related to the employment are so well settled by *Berry*, *Zemke*, and other cases that they do not require elaborate discussion. Section 4663 of the Labor Code provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury." ■ In applying this statute, the board must allow compensation not only for the disability resulting solely from the employment, but also for that which results from the acceleration, aggravation, or "lighting up" of a prior nondisabling disease. Apportionment is justified only if the board finds that part of the disability would have resulted from the normal progress of the underlying nonindustrial disease. The question of apportionment is one of fact, and in making its determination, the board must rely on substantial evidence. Apportionment is not justified on the basis of a medical report not consistent with the principles stated above. (*Berry*, 68 Cal.2d at pp. 789-791; *Zemke*, 68 Cal.2d at pp. 796-799.)

■ We come, then, to the application of the foregoing principles. Dr. Sills' opinion that 50 percent of Normand's pathology was caused by exposure to harmful substances and the remainder to his smoking habit does not provide a basis for apportionment. It is disability resulting from, rather than a cause of, a disease which is the proper subject of apportionment; "pathology" may not be apportioned. (*Duthie* v. *Worker's Comp. Appeals Bd.* (1978) 86 Cal.App.3d 721, 728 [150 Cal.Rptr. 530]; *Hart* v. *Workers' Comp. Appeals Bd.* (1978) 82 Cal.App.3d 619, 626-628 [147 Cal.Rptr. 384]; *Dorman* v. *Workers' Comp. Appeals Bd.* (1978) 78 Cal.App.3d 1009, 1018 [144 Cal.Rptr. 573]; *Bstandig* v. *Workers' Comp. Appeals Bd.* (1977) 68 Cal.App.3d 988, 997-998 [137 Cal.Rptr. 713].) The Sills report does not attribute any part of the disability to Normand's smoking of cigarettes; rather, it purports to make an apportionment of "pathology." Moreover, it does not state whether Normand would have been disabled as the result of

the smoking in the absence of the work-related inhalation of harmful substances. For all that appears in the record, he would not have suffered any disability whatever because of his smoking habit if he had not been exposed to damaging substances in his work. In the absence of such evidence, apportionment was not justified.[2]

Pullman Kellogg contends that the rules of apportionment recited above apply only if the industrial injury which aggravates the preexisting condition results from a specific trauma rather than, as here, from cumulative or continuous injury. We see no reason, nor does Pullman Kellogg offer any, to distinguish between a cumulative trauma and a specific injury in these circumstances. A number of cases have considered the issue of apportionment where the work-related component of the disability consisted of continuous trauma (e.g., *Ballard* v. *Workmen's Comp. App. Bd.* (1971) 3 Cal.3d 832, 834-837 [92 Cal.Rptr. 1, 478 P.2d 937]; *Franklin* v. *Workers' Comp. Appeals Bd.* (1978) 79 Cal.App.3d 224, 230 [145 Cal.Rptr. 22]; *Dorman* v. *Workmen's Comp. Appeals Bd., supra,* 78 Cal.App.3d 1009, 1013; *Skinner* v. *Workmen's Comp. App. Bd.* (1969) 269 Cal.App.2d 905, 906 [75 Cal.Rptr. 314]), and no case called to our attention has made the distinction suggested.

Moreover, the fact that Normand's disease resulted from both work-related and nonindustrial causes operating concurrently and that the nonindustrial component did not predate the industrial injury does not militate against application of the principles of apportionment. Any part of Normand's lung disease which was due to his smoking preceded his disability, and the decisive issue, as in the cases cited above, is whether such disease was accelerated or aggravated by his employment and whether its normal progress would have caused any disability absent the exposure to harmful substances in his work.

■ Another contention made by Pullman Kellogg is that Normand is bound by Dr. Sills' opinion because he introduced the doctor's report into evidence. The board may not apportion disability to a prior condition without substantial evidence, and, of course, the employee has the duty of proving that his disability is work-related. To place upon him the additional burden of establishing that none of the disability is due to a preexisting condition, however, would require him to prove a negative.

---

[2]The referee did not accept Dr. Bierer's opinion as the basis for the award. In any event the Bierer report does not meet the test set forth above, for he does not state that any disability would have resulted solely from Normand's smoking.

It is the employer who benefits from a finding of apportionment, and both the board and writers on the subject have construed the law to require the employer to bear the burden of demonstrating that apportionment to a preexisting disease is appropriate. The forms issued by the board for answers by employers and their insurers to applications for benefits contain a space for the answering defendant to claim apportionment, and in this instance Pullman Kellogg made such a claim.[3] Hanna and the Continuing Education of the Bar volume on workers' compensation recognize that it "devolves upon the employer to produce evidence indicating the proportion of the disability properly chargeable to nonindustrial factors." (See 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1979) § 14.04[2][e], pp. 14-37 - 14-38; Cal. Workmen's Compensation Practice (Cont. Ed. Bar 1973) p. 249.) There is no suggestion in case law that the burden of showing apportionment is or should be on the employee. ■ Thus, the fact that Normand relied upon a medical report which did not justify apportionment did not relieve Pullman Kellogg of its duty to demonstrate that apportionment was appropriate.[4] It failed to do so.[5]

The decision of the board is affirmed.

Bird, C. J., Tobriner, J., Clark, J., Richardson, J., Manuel J., and Newman, J., concurred.

Petitioners' application for a rehearing was denied March 5, 1980.

---

[3]The form contains the phrase: "if apportionment is claimed, so state."

[4]*Baker* v. *Industrial Acc. Com.* (1966) 243 Cal.App.2d 380 [52 Cal.Rptr. 276], upon which Pullman Kellogg relies, is not persuasive authority. In that case, the employee's disability from emphysema was due in part to cigarette smoking and in part to inhalation of dust fumes at work. The board found, on the basis of conflicting evidence, that 55 percent of his permanent disability was industrially caused, and the remainder was due to his smoking habit. The court, relying upon the rule that the question of causation was for the commission, upheld the award. *Baker* was decided before *Berry* and *Zemke* clarified the rules relating to apportionment, and cannnot be viewed as controlling. (See *Franklin* v. *Workers' Comp. Appeals Bd., supra,* 79 Cal.App.3d 224, 246 fn. 8; Hanna, *Apportionment of Permanent Disability: A Review of Recent California Court Opinions* (1970) 21 Hastings L.J. 623, 626-627.)

[5]We do not intend to imply that apportionment is never justified where an employee's disability is due in part to smoking. If there had been medical evidence that some portion of Normand's disability would have resulted from his smoking even without any exposure to harmful substances in his employment, apportionment would have been warranted.