[L.A. No. 28985.    In Bank.    Dec. 15, 1966.]

REYNOLDS ELECTRICAL & ENGINEERING COMPANY, INC., Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD and BURL M. BUCKNER, Respondents.

Herlihy & Herlihy, E. H. Herlihy and Henry E. Phister for Petitioner.

Everett A. Corten, Edward A. Sarkisian and Jack R. Berger for Respondents .

MOSK, J.—Burl M. Buckner, a California resident, suffered an injury to his heart while employed as an ironworker by Reynolds Electrical & Engineering Company, Inc., hereinafter called Reynolds.[1] The Industrial Accident Commission (the commission)[2] awarded Buckner workmen's compensation benefits. In this proceeding Reynolds seeks to annul the commission's award contending that it had no jurisdiction over Buckner's claim because the contract of hire was made in Nevada and that in any event the award is improper because the commission failed to apportion Buckner's disability and unjustifiably imposed a 10 percent penalty on the amount of the award.

This case presents the identical issue involved in *Reynolds Electrical & Engineering Co. v. Workmen's Compensation Appeals Board (Egan), ante,* page 429 [55 Cal.Rptr. 248,

---

[1] Reynolds is a corporation organized and existing under the laws of Texas. It had qualified to do business in California and had designated C. T. Corporation System as its California agent upon which service of process could be made.

[2] Now the Workmen's Compensation Appeals Board.

421 P.2d 96]. Buckner, like James Egan, was a member of the Los Angeles Local 433 of the International Association of Bridge, Structural & Ornamental Iron Workers and was a beneficiary of the same collective bargaining agreement.

The circumstances of Buckner's employment clearly indicate that a contract of hire was executed in California. Buckner had worked for Reynolds on two previous jobs, in 1952 and 1955. He had known Wilfred Bayer, the assistant structural superintendent of Reynolds, for about 20 years. In January 1962 Reynolds needed ironworkers to construct a project for the Atomic Energy Commission at Mercury, Nevada, and Bayer recommended to the structural superintendent on the job that Buckner's name be placed on a requisition form for workers sent to the union. Thereafter, Bayer, who was in Nevada, telephoned Buckner at the latter's home in California and inquired if he wanted to go to work. Buckner replied in the affirmative and Bayer said, "Come on." He also said that he had placed Buckner's name on a requisition for workers to the union and told him to pick up his referral slip at the union hall.[3] Buckner did so, departed for the Nevada jobsite, filled out various forms at the personnel office of Reynolds in Las Vegas, and was paid the travel benefits specified in the collective bargaining agreement. He was injured in July 1962.

Under these circumstances and for the reasons set forth in *Egan, ante,* p. 429 [55 Cal.Rptr. 248, 421 P.2d 96], the commission was justified in concluding that the contract of hire was made in California and that the workmen's compensation laws of this state are applicable.

In June 1962, while Buckner was working on a tower at the Mercury site approximately 80 feet above the ground, he experienced pain in his chest, beginning at the left breastbone. The pain continued 10 or 15 minutes and was of such severity

---

[3]About a month prior to this conversation Buckner had called Bayer and asked if there was work available with Reynolds. Bayer replied that no workers were needed then but that there would probably be work in the near future. Reynolds, relying upon this earlier conversation, contends that the proper interpretation of the evidence is that Buckner offered his services to Reynolds in the earlier talk, that when Bayer subsequently called Buckner from Nevada he was merely accepting Buckner's offer to become employed, and that, therefore, the contract of employment was consummated in Nevada, where the offer was accepted. Obviously, the commission was not obliged to accept this view of the evidence and was justified in concluding that even if the first conversation amounted to an offer by Buckner that offer was not accepted by Bayer and subsequently there was a new offer of employment by Bayer on behalf of Reynolds, which offer was accepted by Buckner in California.

that it was necessary for him to lie down on one of the beams until the pain passed, but he did not report this incident to his supervisor. He went to work as usual on July 9, 1962, and shortly after lunch, while loading pads of lumber on a truck, he had a sharp pain in the left chest area. Later, when he went to the tower to continue working, he again felt pain in his chest, and it was then that his foreman observed his discomfiture. Buckner told the foreman about the chest pain, and as a result he was placed on a truck and driven to the first aid area and from there sent to the company dispensary in Mercury. The doctor at the dispensary prescribed nitroglycerine pills and recommended that he see a Dr. Miller in Las Vegas. He was examined by Dr. Miller and sent home for the night but returned to the doctor the following morning because of his chest pain, and was then hospitalized. Upon discharge, he was told to return to his home in Lancaster, California, and to see a doctor there immediately. He contacted his family doctor upon his return and was under his care thereafter.

Reynolds contends that the evidence does not justify the commission's finding that all of Buckner's disability was due to the heart injury he sustained in July 1962. This argument is based on testimony by Dr. Morton Kritzer, an independent medical examiner, who found that Buckner had suffered an anteroseptal myocardial infarct some years before the 1962 injury.

Section 4750 of the Labor Code provides that, where an employee is suffering from a previous permanent disability and sustains permanent injury thereafter, the employer shall be liable for only that portion of the disability due to the later injury as though no prior disability or impairment had existed.[4] In *Fred Gledhill Chevrolet* v. *Industrial Acc. Com.* (1964) 62 Cal.2d 59, 61 [41 Cal.Rptr. 170, 396 P.2d 586], we had occasion to consider the rules which apply to the situation before us: ''It is well settled that the acceleration, aggravation, or 'lighting up' of a preexisting nondisabling condition is an injury in the employment causing it [citation] and

[4]The section provides: ''An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed.''

'If the resultant disability is entirely due to the industrial injury lighting up the previous dormant condition, then the employer is liable for that disability and there can be no apportionment.' '' ■ Whether a disability results in whole or in part from the normal progress of a preexisting disease or represents a fully compensable lighting up or aggravation of a preexisting condition is a factual question for the commission to determine, and its award will not be annulled if there is any substantial evidence to support it. (*Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1962) 57 Cal.2d 589, 593 [21 Cal.Rptr. 545, 371 P.2d 281].)

■ Although Dr. Kritzer's testimony suggests conflicts, when they are resolved, as they must be, in favor of the commission, the evidence is sufficient to sustain its determination that Buckner's total disability is attributable to the 1962 injury. Dr. Kritzer testified that an electrocardiogram performed in October 1960 showed that Buckner had suffered an anteroseptal myocardial infarct. This condition was asymptomatic and Buckner was unaware of its existence. The heart injury shown on the 1960 electrocardiogram was not disabling and, after 1960, it was possible that Buckner could have continued a normal work life without any further difficulty. The doctor could not predict that Buckner would suffer another attack after 1960 but the chances were "pretty good" that this would happen. Moreover, the doctor could not say that, absent the 1962 attack, the natural progression of the preexisting heart disease would have led to any portion of Buckner's disability or that he would have become disabled if he had not had the 1962 attack. It was true, however, that the preexisting heart disease aggravated the 1962 injury.

In view of this testimony, the commission was justified in concluding that the disability which resulted from the 1962 attack was not the consequence of the normal progression of the preexisting heart disease and that the 1962 attack aggravated Buckner's previously dormant and nondisabling heart condition. Under the principles set forth above, there is no apportionment in such a situation.

■ Nevertheless, Reynolds relies on a statement in Dr. Kritzer's report to the commission that in his view Buckner's disability was the result of his underlying heart disease as well as the July 1962 attack and that 50 percent of Buckner's disability was due to the old injury and 50 percent was attributable to the July 1962 attack. The question of apportionment

was for the commission to decide factually, and it was not required to accept Dr. Kritzer's opinion. (See *Tatman* v. *Provincial Homes* (1963) 94 Ariz. 165 [382 P.2d 573].) As concluded above, the evidence justified the commission's conclusion that Buckner's entire disability was attributable to the 1962 injury.

We next reach the question whether the commission improperly found that Reynolds was liable for a 10 percent penalty on the award on the ground that it was guilty of an unreasonable delay in the furnishing of compensation benefits. The injury occurred in July 1962 and no payments of compensation had been made up to the time of the award in June 1965. Section 5814 of the Labor Code provides that when payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the award is to be increased by 10 percent and that the question of delay and the reasonableness of the cause therefor shall be determined by the commission (now the appeals board) in accordance with the facts.

Reynolds contended before the commission, as it does on appeal, that there were two substantial issues to be determined in regard to Buckner's claim and that it was warranted in failing to pay compensation benefits until these matters were resolved. First, there was a serious question whether Buckner's heart attack in July 1962 arose out of his employment. The commission, in finding Reynolds' delay unreasonable, pointed out that there was no doubt that the injury occurred while Buckner was working and that it was not until January 1965 that Reynolds received any indication that the injury may not have arisen in the course of employment. In that month a doctor who had examined Buckner reported that in his opinion there was no causal relationship between the work he was performing and his heart injury of July 1962. Second, there was a serious question whether California or Nevada had jurisdiction of Buckner's claim. The commission found that Reynolds acted unreasonably in delaying payment pending the determination of this issue since it should have been making compensation payments under the laws of either California or Nevada. Reynolds responds that it was insured under Nevada law and that if it was ultimately decided that Nevada had jurisdiction over Buckner's claim no compensation would have been payable because in Nevada an injury to the heart is, by

statute, not compensable as an industrial injury.[5] (Nev.Rev. Stats.. ch. 616, 616.110.)

There are other factors relevant to the delay in the payment of compensation. The commission had made an award to Buckner prior to the instant order. However, on October 11, 1964, it annulled the decision on the ground that Reynolds had not been properly served. Thereafter, proper service was effected and hearings were held before the commission on December 17, 1964, and May 26, 1965. The award involved in the present case was made in June 1965, and Reynolds' petition for reconsideration was denied in September of that year. During the pendency of these proceedings the case of *Chicago Bridge etc. Co.* v. *Industrial Acc. Com.* (1964) 226 Cal.App.2d 309 [38 Cal.Rptr. 57], was decided, and the commission made its determination in *Egan* that under the terms of the collective bargaining agreement involved there, identical to the one herein, the contract of hire was made in California.

There are a limited number of cases involving the interpretation of section 5814 of the Labor Code, The most recent decision held that the commission was justified in imposing a penalty where the defendant reduced payments because of a mistaken interpretation of the law. (*Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1962) 210 Cal.App.2d 267 [26 Cal.Rptr. 470].) In other cases the commission determined that imposition of the penalty was unjustified where there was a conflict in the evidence as to whether the injured person was an employee or an independent contractor (*Bridges* v. *Robinson* (1959) 24 Cal.Comp.Cases N.S. 59), where the defendants stopped payment and filed a petition to terminate a continuing award upon receipt of a report from a doctor that the employee could do light work (*Mauro* v. *Barron-Gray Co.* (1948) 14 Cal.Comp.Cases N.S. 93), where the defendants filed petitions before the District Court of Appeal and the Supreme Court to avail themselves of their legal rights without being dilatory (*Ruk* v. *Gotham Instrument Co., Inc.* (1948) 14 Cal. Comp.Cases N.S. 160), and where there was a genuine difference of opinion in the medical reports as to the industrial character of the injury (*Thomas* v. *Loftus* (1946) 11 Cal. Comp.Cases N.S. 217).

---

[5] Buckner states that there is no evidence in the record to the effect that heart injury is not compensable under Nevada law. The record shows that the Nevada statute was brought to the commission's attention before it denied the petition for reconsideration.

We hold that the imposition of a penalty was unjustified in the instant case. The commission's decision that the delay was not justified pending determination of the jurisdictional question appears to be based upon an erroneous assumption that Reynolds would have been liable for the payment of compensation under neither Nevada or California law. To the contrary, however, if Nevada had jurisdiction of the claim no compensation would have been payable because under the laws of that state an injury to the heart is not considered to be of industrial character. The fact that the commission decided *Egan* while the present proceeding was pending would not seem to be determinative of the penalty question since that case has been challenged on appeal. And finally, it would seem improper to penalize Reynolds for a delay occasioned by another's error in not effecting proper service. Under these circumstances, it is unduly harsh and an abuse of the commission's discretion for it to strictly apply the provisions of section 5814.

The award is annulled insofar as it requires Reynolds to pay a 10 percent penalty. In all other respects it is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.

Petitioner's application for a rehearing was denied January 10, 1967.