[No. B023439. Second Dist., Div. Two. June 5, 1987.]

GRAY LINE TOURS OF SOUTHERN NEVADA, Plaintiff and Appellant, v.
REYNOLDS ELECTRICAL AND ENGINEERING COMPANY, INC., Defendant and Respondent.

**COUNSEL**

Latham & Watkins, Robert A. Long and Barbara M. Scheper for Plaintiff and Appellant.

Arthur L. Williams, Jr., and Kevin Johnson for Defendant and Respondent.

**OPINION**

**GATES, J.**—Plaintiff Gray Line Tours of Southern Nevada (Gray Line) appeals from the trial court's order quashing service of summons on defendant Reynolds Electrical and Engineering Company, Inc. (Reynolds).

In its complaint of March 5, 1986, Gray Line alleged Reynolds was guilty of negligent and intentional misrepresentations and breach of implied contract in connection with its issuance of a request for proposal and award of a subcontract to a carrier other than Gray Line to " 'operate and maintain an uninterrupted commuter bus transportation system between Las Vegas, Nevada; Pahrump, Nevada; and points within the Nevada Test Site and charters within the state of Nevada or elsewhere.' "

The determinative facts are not disputed. Reynolds is a Texas corporation whose principal place of business is in Nevada. It operates as a support contractor for the Department of Energy at the Nevada Test Site and the Tonopah Test Range in Nevada and "has responsibility for multifaceted functions including construction, maintenance, radiological science, medical services, housing, motor pool operations and area ancillary functions." It also participates in drilling and mining. Each of these activities is conducted within the State of Nevada and all of Reynolds's more than 5,000 employees work in that state.

Pursuant to its contract with the Department of Energy, Reynolds issued a request for proposal on April 5, 1985, to procure bus transportation services for the employees of the Nevada Test Site. These services were to be performed wholly within the state of Nevada. One of the proposals evaluated by Reynolds's Source Evaluation Board (SEB) was submitted by Gray Line, a Nevada corporation headquartered in Las Vegas. The proposal was received in Nevada and all the SEB's inspections, evaluations and discussions concerning Gray Line's proposal took place in Nevada. Although Gray Line's correspondence indicated its parent company stood "ready to commit its financial resources to enable Gray Line to purchase [the necessary buses],"[1] no "member of the SEB visited California for the inspection of equipment, facilities, accounting records, administrative offices or sources related to the proposal of Gray Line ...."

Reynolds has been qualified to do intrastate business in California since October 29, 1951. Beginning in approximately 1970, however, its contacts with this state have been extremely limited. It occasionally employs structural ironworkers to fulfill its contractual obligations at the Tonopah Test Range. The union hall which has jurisdiction over these workers is located

---

[1] Gray Line submitted the declaration of Harry Lewis, a vice president for both Gray Line and First Gray Line Corporation. He averred that Gray Line is a wholly owned subsidiary of First Gray Line, that he and other First Gray Line officers were actively involved in the preparation of Gray Line's bid, that substantially all of their work was done in First Gray Line's Los Angeles office and that they attended several meetings with Reynolds's representatives where they disclosed their involvement in preparing the bid and their intention to provide financial backing should Gray Line be awarded the contract. Lewis did not allege the meetings with Reynolds's personnel took place in Los Angeles.

in Fresno, California, and the union's rules require that all employees be hired through the California Local, whether they are California or Nevada residents.

After our Supreme Court in 1966 determined that California workers' compensation laws were applicable to those ironworkers who are California residents (*Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd.* (1966) 65 Cal.2d 429 [55 Cal.Rptr. 248, 421 P.2d 96]; *Reynolds Elec. etc. Co.* v. *Workmen's Comp. App. Bd.* (1966) 65 Cal.2d 438 [55 Cal.Rptr. 254, 421 P.2d 102]), Reynolds sought certification as a self-insurer. In order to receive such certification, it was required to provide proof of its authority to engage in the transaction of intrastate business in this state, to maintain a business license and to name an agent for service of process in workers' compensation matters. It designated the C.T. Corporation of Los Angeles in this capacity.

A California court may exercise jurisdiction over nonresidents on any basis not inconsistent with the federal or state Constitutions. (Code Civ. Proc., § 410.10.) ▪ In determining whether a particular exercise of jurisdiction is consistent with due process, "the inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.' [Citation.]" (*Rush* v. *Savchuk* (1980) 444 U.S. 320, 327 [62 L.Ed.2d 516, 524, 100 S.Ct. 571].) If a nonresident corporation's activities are sufficiently wide-ranging, systematic and continuous, it may be subject to jurisdiction within the state on all causes of action asserted against it. (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 318 [90 L.Ed. 95, 103, 66 S.Ct. 154, 161 A.L.R. 1057]; *Secrest Machine Corp.* v. *Superior Court* (1983) 33 Cal.3d 664, 669 [190 Cal.Rptr. 175, 660 P.2d 399]; *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 898-899 [80 Cal.Rptr. 113, 458 P.2d 57].) On the other hand, where the activity is less extensive, the cause of action "must arise out of or be connected with the defendant's forum-related activity." (*Buckeye Boiler, supra,* 71 Cal.2d at p. 899; *Secrest, supra,* 33 Cal.3d at p. 669.)

In the instant case neither of the parties are residents of California. Though Reynolds has conducted business here over a long period of time, its activities since 1970 certainly cannot be characterized as pervasive. Moreover, the events which gave rise to Gray Line's cause of action occurred exclusively in Nevada and were completely unrelated to Reynolds's forum-related contacts. ▪ Under these circumstances, there is no justification for exercising even limited jurisdiction over the company.

Gray Line urges, however, that Reynolds's designation of an agent for service of process and its qualification to do business in California are alone

sufficient to permit an exercise of general jurisdiction.[2] In support of this position Gray Line points out that the Judicial Council in its comment to Code of Civil Procedure section 410.10 declared: "A state has power to exercise judicial jurisdiction over a foreign corporation which has authorized an agent or a public official to accept service of process in actions brought against the corporation in the state as to all causes of action to which such authority extends." The same principle is contained in section 44 of the Restatement Second of Conflict of Laws. Gray Line argues the documents filed by Reynolds with the Secretary of State contain no limitations on its activities or on the authority of C. T. Corporation to accept service on its behalf.

More than 50 years ago the District Court for the Southern District of California in *Miner v. United Air Lines Transport Corporation* (1936) 16 F.Supp. 930, considered the extent of the authority conferred upon a statutory agent appointed under the predecessor statute to Corporations Code section 2105.[3] ▆ In our view that court quite rightly concluded: "Thus far the highest court in California has given to this legislation no construction which authorizes service of process upon the statutory agent of the foreign corporation defendant where the suit is founded upon a cause of action in no way connected with business transacted within this state. In the absence of any such interpretation, the decisions . . . rendered by the highest court in the land [e.g., *Morris & Co. v. Ins. Co.* (1929) 279 U.S. 405, 408 (73 L.Ed. 762, 765-766, 49 S.Ct. 360); *Mitchell Furn. Co. v. Selden Breck Co.* (1921) 257 U.S. 213, 215-216 (66 L.Ed. 201, 203, 42 S.Ct. 84)], require in this instance that the California law authorizing service of process upon a foreign corporation doing business within the state be construed so as to exclude from the operation thereof suits founded upon causes of action not arising in the business done by such foreign corporation in this state." (*Id.,* at p. 931. See also *Dunn v. Cedar Rapids Engineering Co.* (9th Cir. 1945) 152 F.2d 733.) ▆ Since there is no evidence in our present record that the authority of Reynolds's agent differed from that required under Corpo-

---

[2] In its opposition to the motion to quash service of summons, Gray Line submitted a copy of the statement of foreign corporation which accompanied Reynolds's application for a certificate of qualification to transact intrastate business, as well as subsequent amendments thereto. With the exception of the most recent amendment filed in 1982, these documents are illegible. Nevertheless, we do not doubt the initial application specifies, as asserted by Gray Line, that Reynolds "irrevocably consents to service of process directed to it upon the agent designated above and to service of process upon the Secretary of State of California if the agent so designated or the agent's successor is no longer authorized to act or cannot be found at the address given." Subdivision (a)(5) of Corporations Code section 2105 explicitly requires the filing of such a statement. Likewise, Reynolds has never denied that it named C. T. Corporation as its agent for purposes of complying with section 2105. In addition, it is probable that Reynolds in 1964 amended its statement to reflect it would be transacting business as a general contractor. Reynolds itself conceded it had so operated prior to 1970.

[3] So far as is relevant here, the contents of the two statutes are in essence the same.

rations Code section 2105, it cannot be said Reynolds consented to the exercise of jurisdiction for all purposes when it appointed C. T. Corporation as its agent.

Gray Line's reliance upon *Holloway* v. *Wright & Morrissey, Inc.* (1st Cir. 1984) 739 F.2d 695, is inapposite. The court in that case did not decide whether or not a New Hampshire statute requiring appointment of an agent for service of process would authorize a suit on a cause of action unconnected to the forum state. It merely concluded the litigation considered there was "unquestionably related" to the defendant's acts in New Hampshire. (*Id.,* at p. 699.)

The order under review is affirmed.

Roth, P. J., and Fukuto, J., concurred.