Filed 1/21/16  Star Ins. Co. v. Workers' Compensation Appeals Board CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| STAR INSURANCE COMPANY,<br><br>Petitioner,<br><br>v.<br><br>WORKERS' COMPENSATION APPEALS BOARD and MARIA ROSA TAVARES et al.,<br><br>Respondents. | H042244<br>(W.C.A.B. No. ADJ8247302) |

Maria Rosa Tavares (Maria), the widow of Armando Tavares (Tavares), and Tavares's dependent children were awarded workers' compensation death benefits. Tavares, a tractor driver, died of ischemic heart disease after complaining of chest pain while at work.  After the Worker's Compensation Appeals Board (Board) denied its petition for reconsideration, Star Insurance Co., the employer's workers' compensation insurance carrier, (petitioner) filed a petition for writ of review in this court.  (See Labor Code, § 5950.)[1]  It asserts that substantial evidence did not support a finding that Tavares's death arose out of his employment.

The medical experts agreed Tavares had very severe coronary artery disease and his sudden death at work was the result of a cardiac event.  The issue before us is whether

---

[1] All further statutory references are to the Labor Code.

the evidence was sufficient to show that Tavares's employment contributed to his death. We find the evidence sufficient and affirm.

## I

### *Procedural History*

Maria applied for adjudication of her workers' compensation claim for death benefits on behalf of herself and three dependent children. Maria was appointed as those children's guardian ad litem and trustee to prosecute the case on their behalf.

Following a hearing on December 3, 2014, the Worker's Compensation Administrative Law Judge (WCJ) found that Tavares had sustained an injury arising out of employment and in the course of employment (AOE/COE) "consisting of a fatal heart attack/heart-cardiovascular injury resulting in death." The WCJ determined that the dependents were entitled to a death benefit of $320,000.

The WCJ's opinion explained that the determination had been based on the medical reports of two physicians, Revels Cayton, M.D., and Maria Nellie Betancourt, M.D. It stated: "Both doctors agree that Mr. Tavares'[s] heart attack was caused by the physical strain he exerted while using the restroom facilities at work. [Tavares's] restroom activities are considered to have arisen out of and during the course and scope of his employment based on decisions in *Allied Signal Inc. v. WCAP (Briggs)* 66 Cal. Comp. Cases 1333 (2001) and *Smith v. WCAB* (196[9]) 71 Cal.2d 588, 34 Cal. Comp. Cases 424. These cases hold that an injury precipitated by a movement which is incidental to the employment constitutes a compensable injury even though it is a normal bodily movement."

Petitioner filed a petition for reconsideration challenging the sufficiency of the evidence. Petitioner pointed out that Dr. Cayton expressed no opinion that physical straining in the bathroom was a causal factor in Tavares's heart attack. Petitioner argued that the finding that Tavares's death arose out of his employment was not supported by substantial evidence.

2

More specifically, petitioner asserted that Dr. Cayton's report, which indicated that the exertion of power washing his equipment contributed to or hastened Tavares's fatal heart attack, did not constitute substantial evidence because it was conclusory and speculative and it failed to provide supportive scientific reasoning. Petitioner further argued that Dr. Betancourt's report did not constitute substantial evidence because her articulated theory, that Tavares had engaged in a Valsalva maneuver in an attempt to defecate, and he had, thereby, precipitated his heart attack did not reflect medical probability.

The WCJ's report and recommendation on the petition for reconsideration concluded that each doctor's opinion provided independent, substantial evidence supporting the decision to award death benefits. As to Dr. Cayton's report, which indicated that Tavares's work activity was a contributing cause of his heart attack and death, the WCJ's report stated that the doctor's opinion was neither conclusory nor speculative because the doctor provided a logical explanation for concluding that activity hastened Tavares's death. As to Dr. Betancourt's report, the WCJ indicated that the report permitted an inference of industrial injury and that scientific certainty is not necessary to establish industrial causation. The WCJ indicated that Dr. Betancourt's stated conclusion that the Valsalva maneuver was the most likely cause of injury met the burden of proof. The WCJ further concluded that, under the personal comfort and convenience doctrine, Tavares's fatal injury while using restroom facilities was sufficient to establish an industrial injury because it resulted from a combination of the Valsalva maneuver and his compromised coronary artery system.

The Board adopted the reasons stated in the WCJ's report and denied the petition for reconsideration.

## II

### *Facts*

Tavares had been employed by Luis Scattini & Sons for three to four years before his death. He worked as a tractor driver on a seasonal basis and drove a tractor approximately 10 hours a day. Tavares sometimes worked as many as 12 hours a day, and he was a dedicated and conscientious employee. In the opinion of Gregory Scattini (Gregory), who managed the business's operations in the fields and office, the job duties of a tractor driver were not physically demanding.

On June 13, 2011, Tavares reported to work at 6:00 a.m. He drove a Caterpillar Challenger that pulled a disc. At about 11:00 a.m., Tavares was pressure washing the mud off the tractor and disc. He used a motorized cart with a hose for this purpose. Tavares went over to Gregory's truck and told Gregory and the foreman, that he was having chest pain. It did not appear to be an emergency and the foreman was going to drive Tavares to see a doctor. Gregory left for another area of the ranch.

Tavares asked to use the restroom before he went to the doctor. He went into the portable toilet, but he did not come out. Coworkers knocked on the door, but they did not receive a response. The door was forced open, and Tavares was found in a sitting position, leaning against the wall. Someone called 911. The first responders pronounced Tavares dead at 12:15 p.m., after they had attempted advanced cardiac life support and consulted with a doctor at Salinas Valley Memorial Hospital.

A day or two before his death, Tavares had complained of chest pain to a coworker. Tavares's younger brother indicated that Tavares had diabetes.

The report of the forensic pathologist, who performed the postmortem examination of Tavares, described him as a Hispanic male, 48 years of age, 70 inches tall, and weighing 251 pounds. It stated that Tavares "died as a result of ischemic heart disease due to coronary artery atherosclerosis (heart attack due to hardening and narrowing of arteries which supply the heart muscle)." It listed the cause of death as

4

"Ischemic heart disease (years) due to coronary artery atherosclerosis (years)." The internal examination of Tavares's coronary arteries had disclosed "[e]xtensive severe atherosclerotic changes, widespread calcification, and long segments greater than 90% narrowing of all proximal coronary arteries, with evidence of old occlusion and recanalization o[f] [the] right coronary artery." The pathologist had found a "gelatinous dark red blood clot occluding the proximal left anterior descending coronary artery."

The coroner's report stated that Tavares's death, although occurring at work, "was related to natural disease process and not any sort of work place accident."

Dr. Betancourt's report, dated June 5, 2013, provided her preliminary opinion that Tavares's death was "solely due to nonoccupational, pre-existing and extensive coronary artery disease without any contribution from work."

Dr. Betancourt's report, dated August 9, 2013, concluded: "[W]ithin reasonable medical probability and based on the entire evidence reviewed, in my professional opinion [Tavares's] coronary artery disease was severe enough to be the sole cause of his sudden death. I have seen no evidence in support of a work-related contribution, not even to a minimal degree."

Dr. Cayton's report, dated November 25, 2013, indicated that he had reviewed Dr. Betancourt's medical report. He agreed that Tavares had very severe coronary artery disease, but he concluded that Tavares's "significant activity placed him at increased risk for the development of a sudden cardiac event." Dr. Cayton stated: "In the case of Mr. Tavares, that increased activity was in the form of washing disk brakes [*sic*]. I think it is fairly obvious given the extensiveness in the coronary disease had he not washed those disk brakes [*sic*] and had he not come to work that day there is a good chance that he would have survived to hospitalization and be alive today." Dr. Cayton also opined: "Absent work, Mr. Tavares had a greater likelihood of surviving. Work certainly hastened his deterioration."

5

Dr. Betancourt's report, dated March 12, 2014, indicated that she had reviewed Dr. Cayton's report and found his reasoning as to Tavares's death to be mere speculation. She believed that "the most likely specific mechanism of injury leading to his death" was his performance of a Valsalva maneuver. She stated: "[F]or all we know, [Tavares] may have felt the need to defecate, may have had to do a Valsalva maneuver to force the stools out and that may have tipped the scales enough to provoke a cardiac decompensation leading to death. A Valsalva maneuver is performed by a moderately forceful attempted exhalation against a closed airway, which increases the intra-abdominal pressure, which in turn facilitates passage of stool through the anus."[2]

### III

### *Sufficiency of the Evidence*

A. *Standard of Review*

" 'Judicial review of the Board's decision on factual matters is limited to determining whether the decision, based on the entire record, is supported by substantial evidence.' [Citations.] In this context, judicial review has been expressly limited by statute to whether the award 'was not supported by substantial evidence' and the factual findings 'support the . . . award.' (§ 5952, subds. (d), (e).) Indeed, section 5952 expressly provides that '[n]othing in this section shall permit the court . . . to exercise its

---

[2] Dr. Betancourt further explained the affect of a Valsalva maneuver on the heart: "This maneuver poses a challenge to the heart because the pressure inside the chest needs to rise, abruptly forcing the blood out of the pulmonary circulation into the left atrium, which immediately floods the left ventricle, causing the myocardium to stretch in response to the rush of volume into the left ventricular chamber, leading to an increase in stroke volume. This increases the immediate energy (oxygen) requirements of the myocardial cells, as the blood needs to be pushed out of the left ventricle. This requires a forceful cardiac contraction against increased peripheral resistance from the increased chest pressure. It also causes decreased myocardial perfusion because the myocardium is contracting, and this decreases the coronary blood flow."

independent judgment on the evidence.' " (*South Coast Framing, Inc. v. Workers' Comp. Appeals Board* (2015) 61 Cal.4th 291, 302-303 (*South Coast Framing*).)

"The WCJ's findings of fact, and the Board's adoption of them, 'are final and conclusive and not subject to appellate review if supported by substantial evidence in light of the entire record.  [Citations.]  Substantial evidence must be reasonable in nature, credible, and of solid value such that a reasonable mind might accept it as adequate to support a conclusion.  [Citation.]  In examining the entire record, this court "may not simply isolate evidence which supports or disapproves the board's conclusions and ignore other relevant facts which rebut or explain the supporting evidence . . . ." ' [Citations.]" (*South Coast Framing*, *supra*, 61 Cal.4th at p. 303.)

"The Legislature, by enacting section 3202, has helped frame the issue of review by an appellate court.  That section provides that issues of compensation for injured workers 'shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment.'  Thus, ' "[a]lthough the employee bears the burden of proving that his injury was sustained in the course of his employment, the established legislative policy is that the Workmen's Compensation Act must be liberally construed in the employee's favor . . . , and all reasonable doubts as to whether an injury arose out of employment are to be resolved in favor of the employee.  [Citation.]  *This rule is binding upon the board and this court*." ' (*Lamb v. Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 280.)" (*Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1290.)

B.  *Governing Law*

Section 3600, subdivision (a), provides in pertinent part:  "Liability for [workers' compensation benefits], in lieu of any other liability whatsoever to any person except as otherwise specifically provided . . . , shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees *arising out of* and *in the course of the employment* and for the death of any employee if the injury proximately

7

causes death, in those cases where the following conditions of compensation concur: [¶] . . . [¶] (2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment. [¶] (3) Where the injury is proximately caused by the employment, either with or without negligence." (Italics added.) " 'Injury' includes any injury or disease arising out of the employment . . . ." (§ 3208.)

"The requirement of Labor Code section 3600 is twofold. On the one hand, the injury must occur 'in the course of the employment.' This concept 'ordinarily refers to the time, place, and circumstances under which the injury occurs.' (2 *Hanna*, [Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1982)] at § 9.01(1)(b), fn. omitted.)" (*Maher v. Workers' Comp. Appeals Bd*. (1983) 33 Cal.3d 729, 733 (*Maher*).) "On the other hand, the statute requires that an injury 'arise out of' the employment. Whether this standard has been met in this case is a more difficult question. It has long been settled that for an injury to 'arise out of the employment' it must 'occur by reason of a condition or incident of [the] employment . . . .' (*Employers etc. Ins. Co. v. Ind. Acc. Com*. (1953) 41 Cal.2d 676, 679.) That is, the employment and the injury must be linked in some causal fashion. (*Kimbol v. Industrial Acc. Commission* (1916) 173 Cal. 351, 353.)" (*Id*. at pp. 733-734.)

"The applicant for workers' compensation benefits has the burden of establishing the 'reasonable probability of industrial causation.' [Citations.] The applicable standard of proof is 'proof by a preponderance of the evidence.' (Lab.Code, § 3202.5.)" (*LaTourette v. Workers' Comp. Appeals Bd*. (1998) 17 Cal.4th 644, 650; see *South Coast Framing*, *supra*, 61 Cal.4th at p. 297.) "If the [industrial] injury causes death, the

worker's dependents are entitled to a death benefit. (§ 4701, subd. (b).)"[3] (*South Coast Framing*, *supra*, at p. 297.)

"Tort law and the workers' compensation system are significantly different. One result of the difference is the role and application of causation principles. '[A]lthough Labor Code section 3600 refers to "proximate cause," its definition in workers' compensation cases is not identical to that found in the common law of torts. [Citation.] "In fact, the proximate cause requirement of Labor Code section 3600 has been interpreted as merely elaborating on the general requirement that the injury arise out of the employment." [Citation.] The danger from which the employee's injury results must be one to which he was exposed in his employment. [Citation.] " 'All that is required is that the employment be one of the contributing causes without which the injury would not have occurred.' " [Citation.]' [Citations.]" (*South Coast Framing*, *supra*, 61 Cal.4th at pp. 297-298.)

"Legal causation in tort law has traditionally required two elements: cause in fact and proximate cause. 'An act is a cause in fact if it is a necessary antecedent of an event.' [Citation.] This has traditionally been expressed as the ' "but for" ' test, i.e., if the injury 'would have happened anyway, whether the defendant was negligent or not, then his or her negligence was not a cause in fact.' [Citations.] 'California has definitively adopted the substantial factor test of the Restatement Second of Torts for cause-in-fact determinations. [Citation.] Under that standard, a cause in fact is

---

[3] Death benefits are not apportioned between various contributing causes. (§ 4702.) Except as otherwise provided, the death benefit in cases of total dependency with "three or more total dependents and regardless of the number of partial dependents," is "three hundred twenty thousand dollars ($320,000), for injuries occurring on or after January 1, 2006." (§ 4702, subd. (a)(5).) "[T]he Legislature has determined that it is socially desirable to make a reasonably adequate provision for such dependents in every case of industrially caused death without regard to other considerations." (*Pacific Gas & Elec. Co. v. Ind. Acc. Com.* (1961) 56 Cal.2d 219, 222-223.)

9

something that is a substantial factor in bringing about the injury.' [Citation.] '[T]he "substantial factor" test subsumes the "but for" test.' [Citations.]" (*South Coast Framing*, *supra*, 61 Cal.4th at p. 298.)

"[T]he workers' compensation system is not based upon fault. 'It seeks (1) to ensure that the cost of industrial injuries will be part of the cost of goods rather than a burden on society, (2) to guarantee prompt, limited compensation for an employee's work injuries, regardless of fault, as an inevitable cost of production, (3) to spur increased industrial safety, and (4) in return, to insulate the employer from tort liability for his employees' injuries.' [Citations.]" (*South Coast Framing*, *supra*, 61 Cal.4th at p. 298.) Because the workers' compensation system is not based upon fault and because statutory policy favors awards of employee benefits, section 3600's requirements of causation are less demanding than tort law. (*South Coast Framing*, *supra*, at p. 298.) "Tort liability only attaches if the defendant's negligence was a significant or substantial factor in causing injury. In the workers' compensation system, the industrial injury need only be a contributing cause to the disability." (*Id*. at p. 299.)

In addition, "[t]he rule has been long established in workers' compensation cases that 'an employer takes the employee as he finds him at the time of the employment.' (*Ballard v. Workmen's Comp. App. Bd.* (1971) 3 Cal.3d 832, 837.)" (*Maher*, *supra*, 33 Cal.3d at p. 734.) "[A]ggravation of an existing infirmity where such aggravation is proximately caused by the employment is compensable, even though a normal man would not have been adversely affected. This rule applies even though it is shown that the employee would have ultimately died from such disease, if the evidence shows and [it is found] that the injury hastened or produced his death. [Citations.]" (*Liberty Mut. Ins. Co. v. Ind. Acc. Com.* (1946) 73 Cal.App.2d 555, 559; see *id*. at pp. 556-557 [while lifting a heavy bag, employee with preexisting heart disease experienced severe pain, "later diagnosed as an occlusion of the left coronary artery with infarction of the left ventricle of the heart"].) Thus, "a disability that is in part attributable to a preexisting disease is

10

nonetheless compensable so long as a worker's employment played *any* contributing role in either aggravating the progressive heart disease or in hastening the occurrence of a heart attack (see, e.g., *Lamb v. Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 281 & fn. 6)." (*City and County of San Francisco v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 103, 115.)

" '[A]n employee may not be denied compensation merely because his physical condition was such that he sustained a disability which a person of stronger constitution or in better health would not have suffered.' [Citations.]" (*South Coast Framing*, *supra*, 61 Cal.4t at p. 300.) " 'A person suffering from a preexisting disease who is disabled by an injury proximately arising out of the employment is entitled to compensation even though a normal man would not have been adversely affected by the event.' [Citations.]" (*Lamb v. Workmen's Comp. Appeals Bd.*, *supra*, 11 Cal.3d at p. 282 (*Lamb*).)

"Though an injury to be compensable must arise out of the employment, that is, occur by reason of a condition or incident of employment, the injury need not be of a kind anticipated by the employer nor peculiar to the employment in the sense that it would not have occurred elsewhere. [Citations.] If we look for a causal connection between the employment and the injury, such connection need not be the sole cause; it is sufficient if it is a contributory cause. [Citation.]" (*Employers Etc. Ins. Co. v. Ind. Acc. Com.* (1953) 41 Cal.2d at pp. 679-680.)

C. *Analysis*

Dr. Cayton's report recognized Tavares suffered from profound heart disease and severely compromised coronary arteries. His report can be reasonably interpreted as reflecting findings that Tavares's heart disease was so extensive and severe that any kind of physical stress or exertion would be sufficient to increase his risk of a sudden cardiac event and hasten such event, and that, in this instance, Tavares's power washing of his equipment constituted such physical stress or exertion. Dr. Cayton implicitly concluded

11

that Tavares's performance of his work duties was a contributing causal factor in hastening his death.

Dr. Cayton had reviewed the forensic pathology report, the coroner's report, Dr. Betancourt's June 5, 2013 and August 9, 2013 medical reports, and the witness statements obtained in the insurance investigation. The evidence showed that the postmortem examination revealed very significant heart disease and coronary artery atherosclerosis. Tavares complained about having chest pains about the time he engaged in the physical activity of power washing. His death due to a heart attack was close in time to that activity.

We recognize that "not all expert medical opinion constitutes substantial evidence upon which the Board may rest its decision." (*Hegglin v. Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 169 (*Hegglin*).) "Medical reports and opinions are not substantial evidence if they are known to be erroneous, or if they are based on facts no longer germane, on inadequate medical histories and examinations, or on incorrect legal theories. Medical opinion also fails to support the Board's findings if it is based on surmise, speculation, conjecture, or guess. [Citation.]" (*Ibid.*)

Dr. Cayton's report indicated that the physical exertion of power washing did contribute to the occurrence of Tavares's heart attack. That opinion was not unfounded speculation. It rested upon relevant facts of Tavares's heart disease as established by the autopsy reports and the evidence of what Tavares was doing around the time he complained of chest pain at work, which was not long before he died of a heart attack. Dr. Cayton did not offer a bare legal conclusion. (See *Hegglin*, *supra*, 4 Cal.3d at pp. 170-171 [doctor's opinion that employee able to perform moderate work constituted substantial evidence since it was based primarily upon tests of the level of liver enzymes in his blood]; cf. *Zemke v. Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794, 798-799 [doctor's opinion that a 50 percent apportionment would be fair posed a mere legal conclusion]; *Granado v. Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399, 407 [doctor's

12

opinion that 50 percent apportionment was reasonable constituted mere legal conclusion]⁴.) "[T]he relevant and considered opinion of one physician, though inconsistent with other medical opinions, may constitute substantial evidence [citations]." (*Smith v. Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 588, 592 (*Smith*).)

Dr. Cayton's opinions are based on correct law. "[E]ven though an employee's underlying heart disease was not caused by his employment, his disability or death is compensable if such disease is aggravated or accelerated by his work. [Citations.]" (*Smith*, *supra*, 71 Cal.2d at p. 592.) "Where an employee suffers a heart attack brought on by strain and over-exertion incident to his employment the injury or death is compensable, even though the idiopathic condition previously existed, and no traumatic injury is necessary. [Citations.]" (*Lumbermen's Mut. Cas. Co. v. Ind. Acc. Com.* (1946) 29 Cal.2d 492, 496-497 (*Lumbermen's*); see *Fogarty v. Depart. of Indus.* (1928) 206 Cal. 102, 110.) Moreover, the physical exertion or strain need not be "unusual or other than that occurring in the normal course of the employment." (*Lumbermen's*, *supra*, at p. 497; see *Lamb*, *supra*, 11 Cal.3d at p. 283 & fn. 8 [actual effect of employment upon the particular worker, not inherent stress of job duties, must be assessed].)

Dr. Cayton's medical opinion together with the evidence of Tavares's very severe heart disease and his complaints of chest pains around the time he was power washing his equipment, a short time before he suffered a fatal heart attack, provided substantial evidence for finding that Tavares's employment was a contributory cause of that cardiac

---

⁴ Apportionment of permanent disability is now based on causation. (§ 4663, subd. (a).) An employer is liable only "for the percentage of permanent disability directly caused by the injury arising out of and occurring in the course of employment." (§ 4664, subd. (a).) A physician's report must include an apportionment determination "by finding what approximate percentage of the permanent disability was caused by the direct result of injury arising out of and occurring in the course of employment and what approximate percentage of the permanent disability was caused by other factors . . . ." (§ 4663, subd. (b).)

event.  We find it unnecessary to resolve whether Dr. Betancourt's opinions provide a further, independent basis for upholding the Board's decision awarding death benefits.

Accordingly, we will affirm the Board's order denying the petition for reconsideration.  (See § 5953.)

IV

*Daubert v. Merrell Dow Pharmaceuticals*, *Inc.*

Petitioner asserts this case presents an opportunity for this court to clarify whether workers' compensation cases are exempt from the evidentiary standards set forth in *Daubert v. Merrell Dow Pharmaceuticals*, *Inc.* (1993) 509 U.S. 579 (*Daubert*).[5] Petitioner argues that *Daubert* should be applied generally to workers' compensation matters and particularly to the medical evidence in this case.

Petitioner did not raise this evidentiary issue in its petition for reconsideration. Section 5904 provides:  "The petitioner for reconsideration shall be deemed to have finally waived all objections, irregularities, and illegalities concerning the matter upon which the reconsideration is sought other than those set forth in the petition for reconsideration."  Accordingly, petitioner may not raise the issue for the first time on in its petition for writ of review.  (See *Nicky Blair's Restaurant v. Workers' Comp. Appeals Bd.* (1980) 109 Cal.App.3d 941, 959.)

---

[5] In *Daubert*, the United States Supreme Court considered former Rule 702 of the Federal Rules of Evidence, which governed expert testimony, and it set forth a number of non-exclusive factors that trial courts could consider in assessing the reliability of scientific expert testimony.  (*Daubert*, *supra*, 509 U.S. at p. 593.)  Those factors included:  (1) whether a scientific theory or technique can be and has been tested (*ibid.*); (2) whether the theory or technique has been subjected to peer review and publication (*ibid.*); (3) the known or potential rate of error of a particular scientific technique (*id.* at p. 594); the existence and maintenance of standards controlling the operation of a particular scientific technique (*ibid.*); and (5) whether a theory or technique has been generally accepted in the relevant scientific community (*ibid.*).

Furthermore, we would reject petitioner's contention on the merits. "All hearings and investigations before the appeals board or a workers' compensation judge are governed by [Division 4 of the Labor Code] and by the rules of practice and procedures adopted by the appeals board." (§ 5708.) The Board and workers' compensation judges are *not* "bound by the common law or statutory rules of evidence and procedure . . . ." (*Ibid.*) Section 5709 provides: "No informality in any proceeding or in the manner of taking testimony shall invalidate any order, decision, award, or rule made and filed as specified in this division. No order, decision, award, or rule shall be invalidated because of the admission into the record, and use as proof of any fact in dispute, of any evidence not admissible under the common law or statutory rules of evidence and procedure." It is simply not the province of this court to establish evidentiary rules for workers' compensation proceedings. (Cf. *South Coast Framing*, *supra*, 61 Cal.4th at p. 307.)

V

*Attorney Fees*

Maria requested that this court remand the case to the Board for an award of attorney fees pursuant to section 5801. Section 5801 provides in pertinent part: "In the event the injured employee or the dependent of a deceased employee prevails in any petition by the employer for a writ of review from an award of the appeals board and the reviewing court finds that there is no reasonable basis for the petition, it shall remand the cause to the appeals board for the purpose of making a supplemental award awarding to the injured employee or his attorney, or the dependent of a deceased employee or his attorney a reasonable attorney's fee for services rendered in connection with the petition for writ of review." "Attorneys' fees are not, however, automatically awarded simply because an appellate court affirms the WCAB's decision. [Citation.]" (*Crown Appliance v. Workers' Comp. Appeals Bd.* (2004) 115 Cal.App.4th 620, 627.)

While we have ultimately concluded that substantial evidence supports the Board's implicit finding that Tavares's death arose out of his employment based on

15

Dr. Cayton's report in light of the entire record, the question was close. We cannot say that there was no reasonable basis for the petition for writ of review.

DISPOSITION

The Board's order denying the petition for reconsideration is affirmed. The request for remand to allow the Board to make a supplemental award of attorney fees pursuant to section 5801 is denied.

_____

ELIA, ACTING P.J.

WE CONCUR:


_____

BAMATTRE-MANOUKIAN, J.


_____

MIHARA, J.


*Star Insurance Company v. Workers' Compensation Appeals Board*
H042244